1

2

3

4

5

6

7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE EASTERN DISTRICT OF CALIFORNIA

9    RENEE' L. MARTIN,

10                    Plaintiff,              No. 2:12-cv-00970-MCE-EFB PS

11            vs.

12   LITTON LOAN SERVICING LP, et al.,        ORDER AND
                                              FINDINGS AND RECOMMENDATIONS
13                    Defendants.
     _____/

14

15          This case, in which plaintiff is proceeding *pro se*, is before the undersigned pursuant to

16   Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Defendants

17   Litton Loan Servicing LP ("Litton"), Ocwen Loan Servicing LLC ("Ocwen"), Deutsche Bank

18   National Trust Company ("Deutsche Bank"), and Western Progressive LLC ("Western") move

19   to dismiss plaintiff's first amended complaint pursuant to Federal Rule of Civil Procedure

20   12(b)(6).  Dckt. No. 32.  Plaintiff opposes the motion.  Dckt. No. 54.

21          A hearing was held on the motion on December 12, 2012.  Dckt. No. 62.  Attorney

22   Douglas Stastny appeared on behalf of defendants; plaintiff appeared pro se.  For the reasons

23   stated herein, the undersigned recommends that defendants' motion to dismiss be granted in part

24   and denied in part.  The undersigned also orders that the November 15, 2012 findings and

25   recommendations, Dckt. No. 47, are vacated and recommends that plaintiff's motion for a

26   preliminary injunction, Dckt. No. 28, be granted.

1

I.      BACKGROUND

On October 11, 2012, plaintiff, who is proceeding pro se, filed an amended complaint alleging various state and federal claims related to property located at 2428 Covered Wagon Circle, Elverta, California 95626 (the "subject property").  First Am. Compl. ("FAC"), Dckt. No. 26.  Plaintiff's first amended complaint alleges thirteen claims for relief: (1) violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605; (2) wrongful foreclosure; (3) quasi contract; (4) no contract; (5) quiet title; (6) civil conspiracy; (7) fraudulent misrepresentation; (8) fraudulent concealment; (9) intentional infliction of emotional distress; (10) parole evidence rule; (11) unjust enrichment; (12) fair credit reporting/defamation; and (13) violation of California Business and Professions Code section 17200.  *Id.*

The heart of plaintiff's allegations is that she has paid all of her mortgage payments and that the only basis for the alleged default is the fact that Litton paid her delinquent property taxes and then increased her payment (via an escrow account to recoup the property taxes) unnecessarily and without her permission.  She contends that she continued to pay the amount of her agreed upon mortgage payment but defendants stopped accepting her payments because she did not include the property taxes in the total amount and was therefore deemed to be in default.  Plaintiff also alleges that she did not sign many of her mortgage documents and therefore disputes their validity.  She also contends that she was not properly notified of the transfer of her mortgage from Litton to Ocwen.  She further contends that she has been harassed by both Litton and Ocwen, and she contends that they are both damaging her credit by reporting inaccurate delinquencies.  She further contends that none of the defendants have any recorded interest in the property.  She also challenges the amount listed in the Notice of Default – $15,974.37.

The first amended complaint alleges:

• Even though the terms of her loan were predatory, plaintiff has made all of the loan payments as agreed and is not in default with the loan.  First Am. Compl., ¶ 2.

////

• None of the named defendants are in the chain of title; none have the authority to foreclose; they have never been the lender and are not authorized as service providers; and cannot make any claims to the mortgage or to the property.  Defendants have committed "civil conspiracy" to defraud the court.  *Id.*

• Defendants have commenced an unlawful foreclosure on the subject property.  All of plaintiff's mortgage payments have been made and are current.  *Id.* ¶ 4.

• Each month, plaintiff makes a payment in the amount of $1143.00 to Ocwen; Ocwen holds it for 35 days and then rejects the payment.  "Ocwen, working jointly with all other defendants rejects each month's payments to falsely establish that Plaintiff is in default, so that all named defendants can foreclose upon Plaintiff's realty and share in the profits."  *Id.* ¶ 5.

• Plaintiff sues Litton, Ocwen, Deutsche, and Western, for commencing the wrongful foreclosure; all defendants have contributed in some way to the unlawful acts.  *Id.* ¶ 16.

• Plaintiff is the owner of the subject property.  *Id.* ¶ 17, Ex. 4.

• Plaintiff refinanced the property with Long Beach Mortgage ("Long Beach") on March 5, 2004.  *Id.* ¶ 18.

• Plaintiff purportedly signed a fixed adjustable rate note, but the note that was provided to plaintiff was unsigned (Ex. 5), as was the deed of trust that was provided to plaintiff (Ex. 6). The only copy of the note that Long Beach provided was an unsigned copy of the "purported" note.  Plaintiff disputes the validity of those documents that were not actually signed or initialed by plaintiff.  She was not given the opportunity to review the documents other than to quickly initial and sign some pages.  Plaintiff was told to leave blank other pages and documents where plaintiff's name appeared.  *Id.* ¶ 19.

• Plaintiff has reviewed the deed of trust that is on file at the Sacramento County Recorder's Office.  *Id.*  Plaintiff did not sign or initial some of those documents in connection with the original loan.  Plaintiff believes that Long Beach purposely had plaintiff leave some documents blank to add additional terms without plaintiff's consent, and have those documents initialed or

signed by someone other than plaintiff.  Although plaintiff was told by Long Beach that she would receive all signed documents relating to the loan, she did not receive any documents from Long Beach, including the signed note or deed of trust ("DOT"), that was purportedly signed by plaintiff but which she denies.  Plaintiff did receive an unsigned copy of the Fixed Adjustable Rate Rider from Alliance Title Company.  *Id.* ¶ 20.

• Plaintiff is listed as the borrower on the note and DOT and Long Beach is the listed lender and beneficiary.  *Id.* ¶ 21.

• Between March 5 and June 5, 2004, Long Beach transferred the note to Washington Mutual Mortgage ("WaMu"), its parent company.  The note was then sold to an investment trust. Thereafter, WaMu acted as a servicer of the loan, but was not the lender or beneficiary.  *Id.* ¶ 22.

• After timely making a fixed payment of $1143.60 to WaMu each month for two years, plaintiff and WaMu modified the loan agreement on May 30, 2006.  *Id.* ¶ 23, Ex. 8.  The parties agreed that the interest rate would be fixed at 6.2%, with a monthly payment of $1,143.00.  The loan modification agreement recognized plaintiff as the sole owner of the subject property, and indicated that no others had ownership, management, or control over it.  *Id.*  All loan payments of $1,143.00 were paid timely.  *Id.* ¶ 23.

• In July 2006, plaintiff received correspondence from Litton, who identified itself as the new party to whom mortgage payments should be made.  *Id.* ¶ 25.

• Plaintiff's mortgage payment became delinquent for one month because her tenant did not pay rent on time, but after one month, plaintiff sent the payments to Litton.  *Id.* ¶ 25.  During that time, when plaintiff spoke with a woman at Litton to inform her that plaintiff would shortly bring the account current, the Litton representative told plaintiff that she would never be able to bring her account current and that foreclosure was inevitable.  *Id.* ¶ 27.

• Plaintiff knew that Litton intended to unlawfully foreclose and did not actually want plaintiff to become current.  *Id.* ¶ 28.

• On June 20, 2010, plaintiff received a billing statement from Litton indicating that the amount due was $2284.98.  *Id.* ¶ 29, Ex. 9.  Plaintiff brought the mortgage current on July 9, 2010 by submitting two payments to Litton.  *Id.*, Exs. 10, 11.

• As of July 5, 2010, the account was current and no longer in default status.  Plaintiff spoke to the Litton representative again, who informed plaintiff that the account was current.  *Id.* ¶ 30.  Litton then confirmed in a July 14, 2010 letter that all payments were received and applied, and that the loan was not in foreclosure status.  *Id.* ¶ 32, Ex. 14.

• Shortly after plaintiff brought the account current in July 2010, Litton started harassing plaintiff, advising her that her taxes for 2009/2010 were delinquent, and suggested that she should contact the taxing authority if she had trouble paying her property taxes.  *Id.* ¶ 34.  Plaintiff did that, and was advised that California would not auction or foreclose a property until six years of delinquency had passed.  *Id.*

• "Litton should not have paid those taxes without plaintiff's consent."  *Id.* ¶ 35.  Attached to Litton's letter about delinquent taxes was a form to create an escrow account, demonstrating that Litton knew it did not have the authority to pay plaintiff's taxes without her consent.  *Id.*

• Plaintiff contacted Litton and advised them that the taxes posed no threat to the property at this time, but Litton responded that foreclosure was inevitable.  *Id.* ¶ 36.  Plaintiff never agreed to anyone other than plaintiff paying the property taxes and never agreed to establish an escrow account.  *Id.*

• In a letter dated September 7, 2010, Litton informed plaintiff that an escrow account was created and that plaintiff's payments would be increased as a result.  *Id.* ¶ 37, Ex. 17.  Commencing on 10/1/10, the new payment would be $1228.06.  "Plaintiff never consented at closing [and has] never consented.  The payments of $1142.66 monthly were established as being a fixed amount for the duration of the loan."  *Id.*

*////*

*////*

• On 8/31/10, plaintiff sent a letter to Litton, advising them that their actions were fraudulent and that plaintiff would continue to make the agreed payments of $1142.66 (plaintiff sends 1143.00).  *Id.* ¶ 38, Ex. 18.

• Litton sent a follow up letter stating that they were obligated to protect their interest in the property by paying the property taxes.  The letter also stated that Litton established the escrow account "pursuant to the loan documents."  However, "there were no loan documents signed authorizing Litton to establish any such accounts that plaintiff consented to in writing."  *Id.* ¶ 38.

• The taxes did not become an issue until plaintiff brought the one month delinquent mortgage current.  At that point, Litton and all other defendants were anticipating a foreclosure and never intended for plaintiff to be able to bring the mortgage current.  *Id.* ¶ 39.

• From July 5, 2010 until now, all payments were made on time.  *Id.* ¶¶ 40-42, Ex. 19.

• Litton will not apply the amounts paid to the mortgage, which establishes Litton's fraudulent grounds to foreclose upon the property.  *Id.* ¶ 43.

• Litton sends repeated letters every other day to plaintiff's mailing address and the property address to harass the tenant.  Plaintiff has received at least 45 letters. ¶ 44.  The harassment has become so outrageous that it placed a strain on plaintiff's relationship with her tenants. ¶ 45.

• Litton sent another letter dated 12/21/10, advising plaintiff that the loan was past due for December, even though it was not.  *Id.* ¶ 46.

• On 9/24/11, plaintiff sent Litton a letter advising Litton not to contact her at the property address since plaintiff does not live there.  *Id.* ¶ 47.  Litton responded on 10/3/11 that because the documents bear plaintiff's signature and validate the debt, Litton intends to continue collection activities on the account.  *Id.* ¶ 48.  Plaintiff denies that the signature is hers.  *Id.*

• In Litton's 2006 welcome letter to her, Litton claimed to have been assigned the loan.  *Id.* ¶ 49.  However, that letter does not prove that the loan was ever assigned or transferred from WaMu.

• In a letter dated 10/18/11, Litton provided plaintiff a "Notice of Default and Intent to Accelerate," stating that plaintiff owed $1753.46.  *Id.* ¶ 50, Ex. 28.

• On 10/27/11, plaintiff received a letter dated 10/4/11, entitled "Notice of Servicing Transfer and Welcome to Ocwen Loan Servicing." The letter was apparently backdated. *Id.* ¶ 51, Ex. 22. The letter instructed plaintiff to make her November payment to Ocwen. That violates RESPA's requirements that plaintiff be informed at least 15 days before such transfer, rather than within 72 hours, like Litton provided.

• The letter also changed the account number. Plaintiff believes the account number was changed to confuse the court and to cover up the wrongdoings. *Id.* ¶ 52.

• Neither Litton nor Ocwen has recorded their interest as either a trustee or service provider, or their assignment of the loan. There is no evidence that either of those defendants have any rights relating to the loan. *Id.* ¶ 53.

• Plaintiff believes that Litton and Ocwen have conspired to defraud plaintiff and have kept the money she has paid them (approximately $100,000), and that they have not paid it towards the balance of the loan. *Id.* ¶ 54, 55.

• On 12/15/11, Ocwen sent plaintiff a "Notice of Default," which stated that $2690.76 was due. *Id.* ¶ 56. The letter informed her she would have thirty days to dispute the debt, in which case Ocwen would send her a verification of the debt. *Id.* Plaintiff intimates that this letter was sent to the subject property, despite her previous requests that correspondence be sent to her home address, causing emotional distress to plaintiff and her tenants. *Id.* ¶ 56, 57.

• Also on 12/15/11, plaintiff sent Ocwen a letter stating that all mortgage payments were current and advising Ocwen to cease the harassment. *Id.* ¶ 58, Ex. 29. Plaintiff provided proof of all payments and instructed Ocwen not to send any further correspondence to the subject property. *Id.* ¶ 59.

• Because none of the defendants have any right to demand anything regarding the loan, plaintiff is not in default with any of the defendants. *Id.* ¶ 60.

• Ocwen has sent plaintiff numerous letters with erroneous amounts allegedly owed. *Id.* ¶ 60, 61. Plaintiff received a 1/17/12 letter alleging that she owed $4,378.06; a 1/18/12 letter alleging

that she owed $3,112.72; and a 2/9/12 letter alleging that she owed $7,327.55.

• Ocwen sent plaintiff a letter dated 2/22/12 stating that plaintiff owes $4655.70. *Id.* ¶ 62, Ex. 32.  Ocwen also stated that it did not receive the payment that was due on 1/5/12 and that another late fee was being assessed.  Other fees were also assessed (such as a property evaluation, which plaintiff claims never occurred, and two certified letter fees, with one letter going to her subject property, despite plaintiff's request to have no mail sent there).

• Plaintiff seeks intervention because her payments are being rejected and returned back into plaintiff's account. *Id.* ¶ 62.

• All defendants are conspiring to foreclose on plaintiff's property. *Id.* ¶ 62, 63, 65.

• Litton and Ocwen are also damaging plaintiff's credit by reporting delinquencies when all loan payments have been timely made. *Id.* ¶ 64.

Defendants have submitted a request for judicial notice which indicates that the deed of trust was assigned to defendant Deutsche Bank on March 19, 2004 and that Western Progressive is an agent for Deutsche Bank; the assignment was recorded on August 16, 2012. Defs.' Req. for Jud. Notice, Dckt. No. 33, Exs. B, C.  Although not specifically alleged in plaintiff's first amended complaint, plaintiff contends that the assignment is fraudulent.  Dckt. No. 42.

II.  <u>MOTION TO DISMISS</u>

Defendants move to dismiss plaintiff's first amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Dckt. No. 32.

A.  <u>Rule 12(b)(6) Standards</u>

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp.

8

235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  However, the courts liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by exhibits attached to the complaint.  *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th

1  Cir. 1987).  The court may also consider facts which may be judicially noticed, *Mullis v. U.S.*

2  *Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other

3  papers filed with the court.  *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir.

4  1986).

5       B.  <u>Plaintiff's Claims</u>

6            1.  <u>RESPA, 12 U.S.C. § 2605</u>

7       Plaintiff alleges that defendants Litton and Ocwen violated the Real Estate Settlement

8  and Procedures Act ("RESPA"), 12 U.S.C. § 2605, by not giving plaintiff 15 days' notice of a

9  new servicer.  First Am. Compl. ¶ 69.  Plaintiff further alleges that Litton violated RESPA by

10 rejecting plaintiff's November 1, 2011 payment instead of forwarding it on to Ocwen, and that

11 Ocwen violated RESPA by assessing a late fee on plaintiff.  *Id.* ¶ 70.  Plaintiff also alleges that

12 she submitted a Qualified Written Request ("QWR") to Litton and Ocwen for an accounting but

13 both have failed to provide an accounting.  *Id.* ¶ 71.  Additionally, according to plaintiff, Litton

14 and Ocwen failed to disclose to plaintiff the true holders of the loan, after repeated attempts by

15 plaintiff to ascertain that information.  *Id.* ¶ 72.

16      Defendants move to dismiss plaintiff's RESPA claim, arguing that plaintiff failed to

17 allege any damages resulting from the alleged RESPA violation.  Dckt. No. 32 at 13.  According

18 to defendants, the only damage alleged by plaintiff is from her own decision to disregard and

19 disobey the notice of servicer change to Ocwen and send her November 2011 payment to Litton

20 instead of Ocwen.  *Id.*

21            a.  <u>Notice of Loan Transfer</u>

22      RESPA provides that when the servicer of a loan changes, the borrower is entitled to

23 notice.  12 U.S.C. § 2605(b)(1), (c)(1), 24 C.F.R. § 3500.21(d)(1)(i).  Specifically, the transferor

24 must provide notice not less than fifteen days before the effective transfer of the loan, 12 U.S.C.

25 § 2605(b)(2)(A), 24 C.F.R. § 3500.21(d)(2)(i)(A), and the transferee must provide notice not

26 more than 15 days after the date of effective transfer.  12 U.S.C. § 2605(c)(2)(A), 24 C.F.R.

1  § 3500.21(d)(2)(i)(B).  These provisions further provide that, for a sixty day period beginning on

2  the date of effective transfer, if a borrower sends their payment to the transferor (instead of the

3  transferee, where the payment should be sent), the borrower will not be charged a late fee.  12

4  U.S.C. § 2605(d); 24 C.F.R. § 3500.21(d)(5).

5       Here, a letter of notice was sent to plaintiff, dated October 4, 2011, and the effective date

6  of transfer was November 1, 2011, which exceeds the 15 day period.  Compl. ¶ 42.  However,

7  plaintiff claims to have not received the letter until October 27, 2011, and alleges that the letter

8  was backdated.  *Id.* ¶ 42.  For the purposes of a motion to dismiss, this court will assume that the

9  plaintiff's allegation is correct, and that the letter was sent on or around October 27, 2011.

10  Nonetheless, as explained, the 15 day notice claims fail.

11       As an initial matter, it appears that plaintiff only brings this claim against Litton and

12  Ocwen.  With regard to Litton, who was the transferor, plaintiff has adequately established that

13  Litton's failure to provide notice of the transfer of the loan to Ocwen at least fifteen days before

14  the effective transfer violated RESPA.  Plaintiff alleges that, because she did not receive timely

15  notice, she sent the November 2011 payment to Litton instead of Ocwen.  Plaintiff seems to

16  allege that the damage that she suffered was, in part, simply by fact that she was not given timely

17  notice.  This alone, however, would not result in actual damages, as there is no pecuniary

18  damage associated with the simple fact that she received late notice.  *Molina v. Wash. Mutual*

19  *Bank*, 2010 WL 431439, at *7 (S.D. Cal. Jan. 29, 2010) (failure to plead pecuniary damages

20  defeats RESPA claim).  As Litton correctly points out, actual damages must be sustained for a

21  plaintiff to prevail on a RESPA violation.  *Id.*; 24 C.F.R. § 3500.21(d)(2)(i)(B).  "Absent factual

22  allegations suggesting that Plaintiffs suffered actual damages, plaintiffs' RESPA claim is

23  insufficiently pled and subject to dismissal."  *Amaral v. Wachovia Mortg. Corp.*, 692 F. Supp. 2d

24  1226, 1232 (E.D. Cal. 2010) (citing *Molina*, 2010 WL 431439, at *7 (concluding that a RESPA

25  claim was infirm because the plaintiffs "failed to sufficiently plead pecuniary loss"); *Lemieux v.*

26  *Litton Loan Servicing*, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) ("Plaintiffs have not

11

1   plead facts showing they suffered actual damages.  Their failure to do so defeats their RESPA

2   claim."); *Garcia v. Wachovia Mortgage Corp.*, 676 F. Supp. 2d 895, 909 (C.D. Cal. 2009)

3   (dismissing RESPA claim because plaintiff "failed to allege damages under Section 2605")).

4         Here, the only pecuniary loss that plaintiff claims she suffered was due to a late fee

5   imposed by Ocwen, which is addressed below.  She has not alleged any pecuniary loss resulting

6   from Litton's RESPA violation.  Therefore, her claim against Litton regarding a failure to

7   provide timely notice of the transfer to Ocwen should be dismissed with leave to amend.

8         With regard to Ocwen, plaintiff has not (and cannot) state a claim for failure to timely

9   provide notice of the loan transfer.  First, although plaintiff technically alleges the claim against

10   Ocwen, the substance of her allegation is that she "should have been informed at least 15 days

11   before such [a] transfer."  Such an allegation would not encompass Ocwen because Ocwen, as

12   the transferee servicer, was required to give notice by a date after the effective date–not before it.

13   12 U.S.C. § 2605(c)(2)(A), 24 C.F.R. § 3500.21(d)(2)(i)(B).  Even if the court construes the

14   plaintiff's notice claims to be filed against Ocwen, Ocwen would not have violated the notice

15   provision, as its notice through this letter was not more than 15 days after the effective date,

16   November 1st; indeed, it was before the effective date.  Ocwen therefore has not violated the

17   notice requirement, and any cause of action premised on that notice requirement against Ocwen

18   is dismissed without leave to amend.  While leave to amend would normally be given, the

19   allegations in plaintiff's complaint as to Ocwen leave no room for damages arising out of a

20   notice violation, because even if the plaintiff could allege that notice was insufficient as to

21   Ocwen's statutory duty to provide notice, the alleged damage arises out of the November 1, 2011

22   payment, and Ocwen's notice was not required before that date; thus, leave to amend would be

23   futile.  *Noll*, 809 F.2d at 1448 (while the court would normally grant a pro se defendant a chance

24   to amend her complaint, the court will not grant leave to amend where it is clear that no

25   amendment can cure the complaint's defects).

26   ////

1    However, plaintiff also alleges that Ocwen assessed a late fee against plaintiff when

2    plaintiff sent her November 2011 payment to Litton, not Ocwen.  The relevant statutes

3    specifically require that, where a borrower pays the transferor service within the first sixty days

4    of the effective date of transfer, the borrower may not be charged a late fee.  Thus, the plaintiff

5    has sufficiently plead a RESPA violation with regard to Ocwen, as Ocwen charged plaintiff a

6    late fee despite the fact that her payment was sent to the transferor within 60 days of the effective

7    date.  Therefore, Ocwen's motion to dismiss plaintiff's RESPA claim based on the alleged

8    imposition of a late fee should be denied.

9               b.  Failure to Respond to QWR

10    Plaintiff also vaguely alleges in her complaint that Litton and Ocwen violated RESPA (1)

11    by not responding to her QWR for an accounting, First Am. Compl. ¶ 71; and (2) by failing to

12    disclose to plaintiff the true holders of the loan, after repeated attempts by plaintiff to ascertain

13    that information.  *Id.* ¶ 72.  Defendants do not directly address those allegations.  However, they

14    do contend generally that all of plaintiff's RESPA claims fail for failure to allege damages.

15    Under RESPA, if a borrower sends a QWR to the servicer of the loan requesting

16    information relating to the servicing of the loan, the servicer has twenty days to acknowledge

17    receipt of the QWR in writing.  12 U.S.C. § 2605(e)(1)(A).  The QWR must enable the servicer

18    of the loan to identify the borrower's name and account and should include a statement by the

19    borrower identifying the reasons why he or she believes the account is in error.  *Id.*

20    § 2605(e)(1)(B).  The servicer of the loan then has sixty days to either rectify the error or to

21    communicate in writing to the borrower why the loan is not in error and must provide the

22    borrower with the name and contact information of someone employed by the servicer who can

23    further assist the borrower.  *Id.* at § 2605(e)(2).  Any servicer failing to comply with the above

24    will be liable to the borrower for his or her actual damages, and for any additional damages in an

25    amount not to exceed $1,000 where the court finds a pattern or practice of noncompliance by the

26    servicer.  *Id.* § 2605(f)(1).

1       Here, plaintiff vaguely alleges that she sent Litton and Ocwen a QWR for an accounting

2 and those defendants failed to respond, and defendants failed to disclose to plaintiff the true

3 holders of the loan, after repeated attempts by plaintiff to ascertain that information.  As an

4 initial matter, those allegations lack specificity and are too speculative under *Twombly* and *Iqbal*.

5 Plaintiff does not allege, among other things, when the QWR or other requests were sent.

6 Nonetheless, as discussed above, alleging a breach of RESPA duties alone does not state a claim

7 under RESPA.  Plaintiff must, at a minimum, also allege that the breach resulted in actual

8 damages.  *See* 12 U.S.C. § 2605(f)(1)(A) ("Whoever fails to comply with this section shall be

9 liable to the borrower . . . [for] any actual damages to the borrower as a result of the failure.");

10 *Hutchinson v. Delaware Savings Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006) (citations

11 omitted) (a claimant under 12 U.S.C. § 2605 must allege a pecuniary loss attributable to the

12 alleged violation).  Here, plaintiff does not specify any damages resulting from an alleged failure

13 to respond to her QWR or requests regarding the true holder of the loan.  Therefore, plaintiff's

14 RESPA claim against Litton and Ocwen based on a failure to respond to a QWR and/or requests

15 for information about the true holders of the loan should be dismissed with leave to amend.

16               2.  <u>Wrongful Foreclosure</u>

17       Plaintiff alleges that none of the defendants have recorded a transfer of beneficial interest

18 in the note or as a loan servicer until recently, and none of the defendants are listed on the deed

19 of trust.  First Am. Compl. ¶¶ 75-79, 82-83.  She also alleges that the deed of trust is void

20 because page one says Sacramento, even though the property is in Elverta.  Also, plaintiff denies

21 executing the documents by initialing each page.  She claims that the initials on each page are

22 different and are not in her handwriting.  *Id.* ¶ 84.  She also notes that the loan modification

23 agreement, which controls, states that payments were to be made to WaMu.  *Id.* ¶ 87.

24       Plaintiff also alleges that the foreclosure is wrongful because all of plaintiff's payments

25 in the amount of $1,142.66 have been made.  According to plaintiff, Ocwen "accepts" the

26 monthly payment for approximately 30 days and then returns the payment back to plaintiff.

1   Ocwen then assesses unconscionable fees for being late and plaintiff's principal balance

2   increases.  Plaintiff characterizes the practice as a deceitful way of justifying the foreclosure by

3   "defrauding plaintiff" with a misleading assertion that no payments have been made since

4   December 2011.  *Id.* ¶ 88.  Additionally, she asserts that the amount demanded on the Notice of

5   Default [$15,974.37] is in error, as demonstrated by conflicting letters sent from Ocwen.  *Id.*

6   ¶¶ 89, 90.  Finally, plaintiff contends that the foreclosure is also wrongful because two new

7   parties – Deutsche and Western– popped out from nowhere to foreclose.  *Id.* ¶ 91.

8       Defendants move to dismiss this claim, arguing that (1) there has been no foreclosure sale

9   yet and plaintiff fails to allege valid or viable tender such to overturn any foreclosure if one had

10  taken place; and (2) plaintiff's "show-me-the-note" theory is without merit and has been rejected

11  by the courts.  Dckt. No. 32 at 13-15.

12      Plaintiff's claim for wrongful foreclosure is premature.  An action for wrongful

13  foreclosure may only be maintained "if the property was fraudulently or illegally sold under a

14  power of sale contained in a mortgage or deed of trust."  *Rosenfield v. JPMorgan Chase Bank,*

15  *N.A.*, 732 F. Supp. 2d 952, 961 (N.D. Cal. 2010) (citing *Munger v. Moore*, 11 Cal. App. 3d 1, 7,

16  89 Cal. Rptr. 323 (1970)) (emphasis added).   However, a wrongful foreclosure claim is

17  premature prior to the foreclosure sale.  *Bogdan v. Countrywide Home Loans*, 2010 WL

18  1241540, at *8 (E.D. Cal. Mar. 26, 2010) (quoting *Vega v. JP Morgan Chase Bank, N.A.*, 654 F.

19  Supp. 2d 1104, 1113 (E.D. Cal. 2009) ("[A] purported wrongful foreclosure claim is premature

20  given there has been no foreclosure of the property.  The wrongful foreclosure claim fails to

21  allege a cognizable cause of action in absence of a foreclosure sale.")).  Unless the foreclosure

22  sale has already taken place, plaintiff's claim for wrongful foreclosure is premature even to the

23  extent there are, theoretically, ground upon which the claim could be predicated.  Plaintiff's

24  complaint does not allege that her property has been sold in a foreclosure action; rather, she only

25  alleges that defendants are attempting to foreclose on her property.

26  ////

1    As the complaint alleges no sale of the property, wrongful foreclosure cannot have

2    occurred.  Plaintiff's claim for wrongful foreclosure should therefore be dismissed.

3            3.  Quasi Contract

4    Plaintiff alleges that she reasonably relied upon Litton and Ocwen's assertion that they

5    were entitled to payment based on what they represented to plaintiff.  First Am. Compl. ¶ 94.

6    According to plaintiff, both defendants knowingly accepted the payments and retained them for

7    their own use knowing that WaMu was still the servicer for the loan and that neither defendant

8    acquired any right from WaMu to accept or keep plaintiff's payments.  Plaintiff contends that

9    neither defendant was in the deed of trust or in the chain of title, and there is no evidence at all

10   that the defendants have any authority whatsoever.  Therefore, plaintiff seeks restitution for all

11   payments made to Litton and Ocwen in the approximate amount of $100,000.  *Id.* ¶ 94.

12   Defendants move to dismiss this claim, arguing that plaintiff's quasi-contract claim is

13   really in furtherance of her unjust enrichment claim (below) and that, as a matter of law, a

14   quasi-contract action for unjust enrichment does not lie where there is an express binding

15   agreement and defined parties.  Here, the note and deed of trust created an express binding

16   contract that defined plaintiff's rights with regard to any payments made to defendants, the

17   servicers of the loan.  Dckt. No. 32 at 16.

18   Plaintiff's third cause of action is for quasi contract and appears to be asserted against

19   Litton and Ocwen only.  "Whether termed unjust enrichment, quasi-contract, or quantum meruit,

20   the equitable remedy of restitution when unjust enrichment has occurred 'is an obligation (not a

21   true contract) created by the law without regard to the intention of the parties, and is designed to

22   restore the aggrieved party to his or her former position by return of the thing or its equivalent in

23   money.'"  *McLaughlin v. Wells Fargo Bank, N.A.*, 2012 WL 5994924, at *8 (C.D. Cal. Nov. 30,

24   2012) (citing 1 Witkin, *Summary of Cal. Law* (10th ed. 2005) Contracts, § 1013, p. 1102)).

25   "[A]n individual may be required to make restitution if he is unjustly enriched at the expense of

26   another.  A person is enriched if he receives a benefit at another's expense.  The term 'benefit'

16

1   'denotes any form of advantage.' . . . Even when a person has received a benefit from another, he

2   is required to make restitution 'only if the circumstances of its receipt or retention are such that,

3   as between the two persons, it is unjust for him to retain it.'" *F.D.I.C. v. Dintino*, 167 Cal. App.

4   4th 333, 346-47 (2008).

5          Plaintiff's claims rely on the notion that Litton and Ocwen were never legitimate

6   servicers of the loan, that WaMu remained the servicer of the loan, and that Litton and Ocwen

7   simply kept her payments and split them up between one another.  The majority of plaintiff's

8   allegations supporting this theory are bare assertions, such as the conclusory statement that none

9   of the defendants acted with any authority whatsoever.  Such speculative, conclusive assertions

10  are insufficient to plead a claim.  Lacking is any underlying factual allegations demonstrating the

11  conclusion asserted.

12         Plaintiff notes that neither Litton nor Ocwen are in the deed of trust or in the chain of

13  title, and that neither Litton nor Ocwen recorded their roles as servicers of the loan.  However,

14  plaintiff has not provided any authority demonstrating that a loan servicer is required to record

15  its status as a loan servicer on the chain of title.  As such, this does not provide a sufficient

16  factual allegation to support plaintiff's claims for quasi contract against Litton and Ocwen.

17         To the extent plaintiff's claim for quasi-contract is based on her recent allegation that the

18  assignment of the deed of trust from WaMu to Deutsche Bank was fraudulent (*see* Dckt. No. 42),

19  and that therefore the servicers who were allegedly working on behalf of Deutsche Bank (Litton

20  and Ocwen) had no right to collect payments on behalf of Deutsche Bank, those allegations are

21  not alleged in plaintiff's first amended complaint.  Accordingly, plaintiff's quasi-contract claim

22  should be dismissed with leave to amend.

23                 4. No Contract

24         Plaintiff alleges that the initials on the deed of trust that purport to be hers, are not.  She

25  contends that those pages were not initialed by her and that therefore, there was no contract

26  between plaintiff and Long Beach.  If there was no contract with Long Beach, there would also

1  be no contract with WaMu, and neither defendant has the right to receive payments under

2  plaintiff's mortgage loan or foreclose on the subject property.  Plaintiff contends that no contract

3  exists between plaintiff and defendants. First Am. Compl. ¶ 96.

4       Defendants move to dismiss this claim, arguing that any claim that the deed of trust is

5  void because the initials on it are not hers, is barred under the Truth in Lending Act's three-year

6  statute of limitations for rescission claims.  15 U.S.C. § 1635(f).  Defendants argue that plaintiff

7  attempts to rescind the contract she agreed to and has allegedly performed under for eight years,

8  and yet expects to keep the benefit of that contract without repayment of the principal used to

9  purchase the property.  Dckt. No. 32 at 16.

10      It does appear that the thrust of this "no contract" claim is an attempt to seek rescission of

11 the contract.  However, it is not clear from the allegations of the complaint what plaintiff actually

12 contends as to whether there was, or was not, a contract, and if so, what its terms were.  She

13 alleges that no contract exists regarding the subject property because the initials on the deed of

14 trust are not hers.  Yet, while she makes allegations that some of the initials were not her own,

15 she does not indicate what she did agree to in the contract prior to the alleged insertion of

16 additional pages and allegedly falsified signatures.  Thus, even if the court accepts plaintiff's

17 bare allegation that the contract was altered, it is unclear what sort of contract was in fact

18 actually entered into by the plaintiff prior to the addition of other pages, and whether that

19 contract would be valid.  Importantly, it is unclear whether plaintiff contends that she did not

20 agree to paragraph 4 of the deed of trust, which required plaintiff to pay her property taxes, or to

21 paragraph 9, which authorizes the lender to pay whatever is reasonable and necessary to protect

22 its interest in the property.[1]  Therefore, plaintiff's claim for no contract will be dismissed with

23

24      [1] Paragraph 4 of the deed of trust states that plaintiff is required to "pay all taxes,
   assessments, charges, fines, and impositions attributable to the property" and that if the lender
25 "determines that any part of the Property is subject to a lien which can attain priority over [the
   deed of trust], Lender may give Borrower a notice identifying the lien.  Within 10 days of the
26 date on which that notice is given, Borrower shall satisfy the lien or take one or more of the

1  leave to amend.

2        5.  <u>Quiet Title</u>

3        Plaintiff seeks to quiet title as of March 8, 2004.  Plaintiff seeks a judicial declaration that

4  the title to the subject property is vested in plaintiff alone and that the defendants have no

5  interest, right, or title to the property.  First Am. Compl. ¶ 99.  Defendants move to dismiss this

6  claim, arguing that it fails because plaintiff has not alleged valid and/or viable tender of the

7  indebtedness.  Dckt. No. 32 at 17.

8        To establish a claim for quiet title, plaintiff must file a verified complaint that alleges: (a)

9  a description of the property; (b) plaintiff's title as to which a determination is sought; (c) the

10  adverse claims to the title; (d) the date as to which the determination is sought; and (e) a prayer

11  for the determination of title.  Cal. Civ. Proc. Code § 761.020.  Additionally, plaintiff must allege

12  that she has tendered her indebtedness.  *See Kelley v. Mortg. Elec. Registration*, 642 F. Supp. 2d

13  1048, 1057 (N.D. Cal. 2009) ("Plaintiffs have not alleged . . . that they have satisfied their

14  obligation under the Deed of Trust.  As such, they have not stated a claim to quiet title."); *see*

15  *also Distor v. U.S. Bank, NA*, 2009 WL 3429700, at *6 (N.D. Cal. Oct. 22, 2009) ("plaintiff has

16  no basis to quiet title without first discharging her debt, and . . . she has not alleged that she has

17  done so and is therefore the rightful owner of the property").

18        Here, defendants contend that plaintiff fails to allege tender or the ability to tender.

19  However, plaintiff's first amended complaint specifically alleges that she does not owe anything

20  to any of the defendants.  The fundamental essence of her claim is that she sent the regular

21  payment of her mortgage every month but defendants wrongfully refused to process those

22  payments because of the dispute over the amount and, because defendants did not have the

23  authority to pay taxes on her behalf, they lacked authority to alter the amount due on her

24  _____

25  [other actions identified in that paragraph to address the lien]."  First Am. Compl., Ex. 6.
    Paragraph 9 authorizes the lender to pay whatever is reasonable and necessary to protect its
    interest in the property.  *Id.*  Paragraph 10 of the loan modification agreement, First Am. Compl.

26  Ex. 8, also reaffirmed plaintiff's obligation to pay her taxes.

payments.  Therefore, according to plaintiff, she has submitted her payments as due and there is

nothing further to tender.

At the hearing, plaintiff specifically stated that she did not agree to paragraphs 4 or 9 of

the deed of trust, which required her to pay taxes and which authorized the lender to pay the

taxes on her behalf, nor did she agree to paragraph 10 of the loan modification agreement, which

also reaffirmed plaintiff's obligation to pay her taxes.  If her allegations are taken as true, she has

satisfied the tender requirement.[2]  In light of plaintiff's allegations that she has timely submitted

her payments, and her allegations that she did not agree to all of the terms in the deed of trust,

plaintiff's quiet title claim is sufficient to withstand defendants' motion to dismiss.

### 6. Civil Conspiracy

Plaintiff alleges Ocwen and Litton agreed and conspire with one another to add late fees

and other unnecessary fees.  She claims that the fraudulent fees were imposed upon plaintiff to

make a fraudulent commencement of foreclosure appear justified.  Each month, she says, she

made her mortgage payment but it was rejected and defendants wrongfully assessed a late fee.

First Am. Compl. ¶ 102.  Plaintiff also alleges that defendants agreed and conspired to change

plaintiff's account number to confuse the court and plaintiff if plaintiff instituted litigation.  *Id.*

¶ 103.  She claims that defendants conspired to make plaintiff believe that they had full rights as

a lender or that the mortgage had been assigned to them, and Deutsche and Western acted in

concert with those other defendants in an effort to hide their identities so that they could

commence a foreclosure upon plaintiff's home.  *Id.* ¶ 104.  Defendants knowingly and

intelligently agreed and conspired not to record any assignments.  *Id.* ¶ 105.

Defendants move to dismiss this claim, arguing that (1) there is no independent tort that

is sufficiently pled against the defendants, and (2) plaintiff does not allege facts sufficient to

constitute a claim of conspiracy.  Dckt. No. 32 at 17-19.

---

[2]  While defendants argue that the allegations are unfounded, whether plaintiff will ever
be able to prove her allegations is simply not before the court on this Rule 12(b)(6) motion.

1      A conspiracy is not an independent cause of action, but is instead "a legal doctrine that

2   imposes liability on persons who, although not actually committing a tort themselves, share with

3   the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v.*

4   *Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-11 (1994).  Thus, to properly state a claim for

5   imposing liability under a conspiracy basis, plaintiff must not only properly allege facts showing

6   the elements for the underlying cause of action,[3] she must also satisfy the elements for

7   establishing conspiracy.  Liability for civil conspiracy generally requires three elements: (1)

8   formation of a conspiracy (an agreement to commit wrongful acts); (2) operation of a conspiracy

9   (commission of the wrongful acts); and (3) damage resulting from operation of a conspiracy.  *Id.*

10   at 511.  A civil conspiracy is therefore activated by the commission of an underlying wrongful

11   act.  *Id.*

12      Here, plaintiff alleges that defendants Ocwen and Litton conspired with one another to

13   unlawfully add late fees and other unnecessary fees in order to fraudulently commence the

14   foreclosure process, and also agreed and conspired to change plaintiff's account number to

15   confuse the court and plaintiff if plaintiff instituted litigation.  Plaintiff also alleges that all of the

16   defendants conspired to hide the identities of the proper beneficiary Deustche Bank (by failing to

17   record the assignment of interest to Deutsche) so that Deutsche could move forward with the

18   foreclosure.  Although it is not entirely clear what underlying tort(s) plaintiff contends

19   defendants committed, it appears that all of the allegations are based on her contention that there

20   was a concerted effort to defraud plaintiff so that her property could be foreclosed upon.

21   However, as discussed below, none of plaintiff's fraud allegations contain the requisite

22   specificity to withstand a motion to dismiss.  Therefore, plaintiff's conspiracy allegations, which

23   are based on that alleged fraud, should also be dismissed with leave to amend.

24   ////

25

26      [3] As noted, many of plaintiff's underlying causes of action fail to state a claim because
     the has not properly plead facts showing the required elements for those claims.

7.   <u>Fraudulent Misrepresentation</u>

Plaintiff alleges that she believed that Litton was a proper entity entitled to her mortgage payment.  Plaintiff asserts that she believed that the monthly payments were being applied to her loan even though they were not.  She claims that she now has discovered that defendants are not entitled to such payments and there is no evidence that Litton has any beneficial right to the property.  First Am. Compl. ¶ 108.  Plaintiff further alleges a "ponzi scheme" between Litton and Ocwen, *id.* ¶ 109, and that all defendants have fraudulently misrepresented their roles to plaintiff. *Id.* ¶ 110.  Additionally, Litton and Ocwen misrepresented the amounts paid by not applying them to plaintiff's principal balance, and that all defendants conducted themselves in a deceitful way.  *Id.* ¶ 111.

Defendants move to dismiss, arguing that the claim (1) lacks particularity, as required by FRCP 9(b), and (2) is contradicted by the deed of trust.  Dckt. No. 32 at 19-20.

Federal Rule of Civil Procedure 9(b) requires fraud claims to be pled with particularity. To state a claim for fraud, a plaintiff must plead "(a) misrepresentation; (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Small v. Fritz Cos.*, 30 Cal. 4th 167, 173 (2003); *see also* Cal. Civ. Code §§ 1709-10.  "In all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  In addition to the "time, place and content of an alleged misrepresentation," a complaint "must set forth what is false or misleading about a statement, and . . . an explanation as to why the statement or omission complained of was false or misleading."  *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993, n.10 (9th Cir. 1999).  The complaint must also name the persons who made the allegedly fraudulent statements.  *See Morris v. BMW of N. Am., LLC*, 2007 WL 3342612, at *3 (N.D. Cal. 2007) (citing *In re Glenfed,*

1    *Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 n.7 (9th Cir. 1994) (en banc)).

2        Here, plaintiff's allegation that she believed that Litton was a proper entity entitled to her

3    mortgage payment and that she believed that her monthly payments to Litton were being applied

4    to her loan even though were not properly applied, and her allegation that Litton acted without

5    authority to receive those payments, her allegation of a ponzi scheme between Litton and

6    Ocwen, *id.* ¶ 109, and her allegation that these defendants fraudulently misrepresented their roles

7    to plaintiff, *id.* ¶ 110, all appear to be based on her assumption that Litton and Ocwen were not

8    proper servicers of the mortgage.  She predicates this assumption on her assertion that they had

9    no recorded interest in the property and that therefore they had no right to collect her mortgage

10   payments.  However, plaintiff has not provided any authority for the proposition that Litton

11   and/or Ocwen was required to record its interest in the property.  Moreover, it is unclear from the

12   complaint why plaintiff thinks that Litton and Ocwen "fraudulently misrepresented their roles to

13   plaintiff."  Additionally, although plaintiff alleges misrepresentations by Litton and Ocwen

14   regarding the amounts paid by plaintiff, and that all defendants conducted themselves in a

15   deceitful way, those allegations lack the requisite specificity under Rule 9(b) and should be

16   dismissed with leave to amend.[4]

17              8.  Fraudulent Concealment

18       Plaintiff further alleges that Litton and Ocwen concealed their roles and concealed other

19   parties that are claiming an interest such as Deutsche and Western, and that Litton and Ocwen

20   concealed that plaintiff is making regular monthly payments in the amount of $1143 which

21   Ocwen has returned.  First Am. Compl. ¶ 113.  Plaintiff contends that by concealing those

22   payments, it places plaintiff at risk of foreclosure when all payments are current.  *Id.* ¶ 114.

23   
───────────────

24       [4] To the extent plaintiff's allegations regarding Litton and/or Ocwen's lack of authority to
     collect her mortgage payments is based on her recent contention that the assignment of the deed
25   of trust to Deustche Bank was fraudulent (and that Litton and Ocwen therefore had no authority
     to collect mortgage payments on Deustche Bank's behalf), those allegations are not set forth in
26   the first amended complaint.

1    Defendants move to dismiss this claim, again arguing that it (1) lacks particularity, as

2    required by Rule 9(b), and (2) is contradicted by the deed of trust.  Dckt. No. 32 at 19-20.

3    Again, Federal Rule of Civil Procedure 9(b) requires fraud claims to be pled with

4    particularity.  Here, like plaintiff's confusing, vague fraudulent misrepresentation allegations

5    above, plaintiff's allegations of fraudulent concealment lack the requisite specificity to withstand

6    a motion to dismiss.  Although plaintiff alleges Litton and Ocwen concealed their roles, as

7    discussed above, plaintiff has not clearly alleged what roles they were concealing or how those

8    roles were concealed.  Also, although plaintiff alleges that Litton and Ocwen concealed other

9    parties that are claiming an interest such as Deutsche and Western, it is unclear how they

10   concealed those parties.  To the extent plaintiff claims it is based on a failure to timely record

11   Deutsche Bank's interest, plaintiff has not clearly alleged how Litton and Ocwen played a role in

12   that, nor has she alleged how she was injured by the failure to timely record Deutsche Bank's

13   interest as beneficiary.  Finally, although plaintiff alleges that Litton and Ocwen concealed

14   plaintiff's monthly mortgage payments, she has not alleged how they concealed those payments,

15   who those payments were concealed from, or how she was injured by that concealment.  Rather,

16   it appears from the first amended complaint that the defendants who commenced the foreclosure

17   proceedings did so because of a perceived failure to pay the entire amount owed, which included

18   an amount escrowed due to Litton's payment of plaintiff's property taxes, and did not do so

19   based on plaintiff's failure to pay her initial mortgage payment alone.  Therefore, plaintiff's

20   fraudulent concealment claims should be dismissed with leave to amend.

21           9.  Intentional Infliction of Emotional Distress

22   Plaintiff alleges that she has systemic lupus erythematosus and that any type of emotional

23   stresses can cause her major organs to shut down, which can lead to death.  First Am. Compl.

24   ¶ 116.  According to plaintiff, defendants have intentionally caused plaintiff stress by threatening

25   her with foreclosure when all payments are timely and current; by not applying those payments

26   to the principle; by not being the authorized parties with any evidence recorded that they have

24

1   rights regarding the property; by Ocwen continuously sending correspondence to the subject

2   property, despite plaintiff's requests not to; and by Ocwen threatening plaintiff's tenants, who in

3   turn complain to plaintiff. *Id.* Litton and Ocwen have also made negative credit reports about

4   plaintiff, assessed numerous unlawful fees, and forced plaintiff to be defaulted by refusing to

5   accept her mortgage payments. *Id.* ¶ 117.

6          Defendants move to dismiss, arguing that plaintiff has not adequately alleged that

7   defendants' actions were extreme or outrageous. Dckt. No. 32 at 21.

8          "In order to establish a claim for intentional infliction of emotional distress under

9   California law, [plaintiff is] required to show (1) that the defendant's conduct was outrageous,

10   (2) that the defendant intended to cause or recklessly disregarded the probability of causing

11   emotional distress, and (3) that plaintiff's severe emotional suffering was (4) actually and

12   proximately caused by defendant's conduct." *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir.

13   2004). "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature

14   which is especially calculated to cause, and does cause, mental distress' is actionable." *Brooks*

15   *v. United States*, 29 F. Supp. 2d 613, 617-18 (N.D. Cal. 1998). Here, plaintiff's allegations, if

16   taken as true, are sufficient to withstand defendants' motion to dismiss her claim for intentional

17   infliction of emotional distress. Again, although defendants' strongly dispute plaintiff's

18   allegations, the question of whether plaintiff may be able to prove what she alleges is simply not

19   before the court on this motion.

20                    10. Parole Evidence

21          Plaintiff contends that defendants cannot add terms to the loan modification agreement

22   and alleges that she has never agreed to have defendants pay or advance property taxes,

23   particularly because the property was not at risk; therefore, defendants are barred from asserting

24   that they had a right to advance those taxes. First Am. Compl. ¶ 120. Plaintiff contends that

25   there is also no evidence that defendants had a right to make any demands on the property since

26   none of them are listed on any of the documents. *Id.*

1    Defendants move to dismiss, arguing that (1) there is no authority supporting such a

2 claim, and (2) the parole evidence rule is completely inapplicable because defendants were

3 expressly authorized to escrow plaintiff's property taxes in order to protect their interests under

4 the deed of trust and the loan modification does not supersede the deed of trust or the note – it

5 only modified the terms of the note and deed of trust as to the principal balance and the interest

6 rate.  Dckt. No. 32 at 22-23.  The loan modification expressly states that plaintiff's agreements to

7 make all payments of taxes, etc. were reaffirmed.  *Id.* at 23; Defs.' Req. for Jud. Notice, Dckt.

8 No. 33, Ex. D, at 4 Sec. 10-11.

9    The parole evidence rule is not a cause of action.  The rule deals with the exclusion or

10 inclusion of certain evidence when interpreting a contract.  Cal. Civ. Proc. § 1856.  Plaintiff has

11 provided no authority demonstrating that the parole evidence rule creates an independent cause

12 of action.  Therefore, plaintiff's claim under that rule should be dismissed without leave to

13 amend.

14    11.  Unjust Enrichment

15    Plaintiff alleges that defendants have been unjustly enriched by their ponzi scheme since

16 none of the mortgage payments have been applied to plaintiff's principal.  First Am. Compl.

17 ¶ 122.  Defendants move to dismiss, arguing that there is no cause of action in California for

18 unjust enrichment.  Nor has plaintiff alleged facts establishing that defendants unjustly received

19 benefits at plaintiff's expense; the fact that plaintiff made loan payments to defendants is

20 insufficient.  Dckt. No. 32 at 15.

21    Plaintiff's cause of action for unjust enrichment fails as a matter of law.  California does

22 not recognize an independent cause of action for unjust enrichment; rather, it is a restitution

23 remedy that must be connected to some underlying wrong.  *Hill v. Roll Int'l Corp.*, 195 Cal.

24 App. 4th 1295, 1306, 128 Cal. Rptr. 3d 109, 118 (2011); *Melchior v. New Line Productions, Inc*.,

25 106 Cal. App. 4th 779, 793 (2003).  Here, that underlying claim is already discussed above

26 (quasi-contract).  Therefore, to the extent that plaintiff pleads a separate cause of action for

1   unjust enrichment, that claim should be dismissed without leave to amend.

2               12.   Credit Reporting/Defamation

3        Plaintiff alleges that defendants have violated the Fair Credit Reporting Act, 15 U.S.C.

4   § 1692, by failing to conduct proper investigations of disputed credit entries by plaintiff and

5   § 1581e, by failing to allow plaintiff to rebut their negative and incorrect credit reports.  First

6   Am. Compl. ¶ 125, 126.  Defendants also failed to take corrective action after being advised of

7   the inaccuracy of the credit reports, resulting in a loss of business and employment opportunities

8   for plaintiff.  Additionally, plaintiff's tenants are seeking another place to rent due to their fear of

9   foreclosure.  *Id.* ¶ 127.

10       Defendants move to dismiss this claim, arguing that the Fair Credit Reporting Act was

11  never triggered since the Act is only triggered when a "furnisher" of information receives notice

12  from an agency that a consumer disputes the information.  Here, none of the defendants received

13  notice from a credit agency that plaintiff disputed the information furnished and plaintiff does

14  not allege otherwise.  Dckt. No. 32 at 23.

15       Plaintiff contends that defendants violated § 1581e of the Fair Credit Reporting Act.  It is

16  unclear from plaintiff's first amended complaint what provision of the FCRA she contends

17  defendants violated.  The section she cites, Section 1581e, does not exist.  To the extent plaintiff

18  intended to cite to § 1681e, that section is inapplicable and does not reflect the allegations that

19  plaintiff associated with her citation to § 1581e.  Therefore, plaintiff's claim under the FCRA

20  should be dismissed with leave to amend.

21               13.   California Business and Professions Code Section 17200

22       Plaintiff alleges defendants have committed a variety of unlawful business practices,

23  including misrepresenting and concealing the inception, terms, ownership, and servicing of the

24  mortgage for plaintiff's property; unlawfully foreclosing on the property; conspiring to defraud

25  plaintiff to induce her to keep making mortgage payments; and accepting monthly payments and

26  then returning them after four weeks.  First Am. Compl. ¶ 130.

1    Defendants move to dismiss this claim, arguing that it fails because it is derivative of the

2    other failed claims addressed above.  Dckt. No. 32 at 26.

3    California's Unfair Competition Law, section 17200, prohibits any "unlawful, unfair or

4    fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Section 17200

5    incorporates other laws and treats violations of those laws as unlawful business practices

6    independently actionable under state law.  *Chabner v. United Omaha Life Ins. Co.*, 225 F.3d

7    1042, 1048 (9th Cir. 2000).  Violation of almost any federal, state or local law may serve as the

8    basis for a section 17200 claim.  *Saunders v. Super. Ct.*, 27 Cal. App. 4th 832, 838-39 (1994).  In

9    addition, a business practice may be "unfair or fraudulent in violation of [section 17200] even if

10   the practice does not violate any law."  *Olszewski v. Scripps Health*, 30 Cal. 4th 798, 827 (2003).

11   Here, plaintiff alleges that defendants engaged in unlawful business practices under

12   section 17200.  She contends that defendants' conduct violated numerous laws.  However, as

13   discussed above, the only allegations sufficient to state a claim that defendants violated a

14   statutory provision are plaintiff's allegations that Ocwen violated RESPA by imposing a late fee

15   on plaintiff's November 2011 payment.  Therefore, to the extent plaintiff's Section 17200 claim

16   is based on that violation, Ocwen's motion to dismiss the claim should be denied.  However,

17   with regard to plaintiff's other allegations, the Section 17200 claim should be dismissed with

18   leave to amend.

19              14.  <u>Declaratory and Injunctive Relief</u>

20   Neither declaratory or injunctive relief are independent causes of action.  Rather, they are

21   remedies that may or may not be available to plaintiff if she prevails on one or more of her

22   causes of action.  Plaintiff contends that an actual controversy has arisen and now exists between

23   plaintiff and defendants.  Plaintiff contends that defendants are not in the chain of title and are

24   not on any recorded documents, and argues that under California Civil Code section 2932.5, a

25   power of sale may only be exercised by an assignee if the assignment is duly acknowledged and

26   recorded.  FAC ¶ 134.  Plaintiff contends that none of the defendants are the proper beneficiary,

28

1   servicer, or trustee because there is nothing in the chain of title evidencing such authority.  *Id.*

2   ¶ 135.  If she prevails on the claim, she may or may not be entitled to these remedies.[5]

3        Here, the declaratory relief plaintiff seeks is commensurate with the relief sought through

4   her other causes of action.  Thus, plaintiff's declaratory relief claim is duplicative and

5   unnecessary.  *See Permpoon v. Wells Fargo Bank Nat. Ass'n*, 2009 WL 3214321, at *5 (S.D.

6   Cal. Sep. 29, 2009).  Additionally, plaintiff's claim for injunctive relief is not a cause of action,

7   but, rather, a request for a remedy, which must be connected to some other cause of action.  *Shell*

8   *Oil Co. v. Richter*, 52 Cal. App. 2d 164, 168 (*citing Williams v. Southern Pac. R. R. Co.*, 150

9   Cal. 624 (1907)).

10       C.  Defendants' Additional Argument

11        Defendants also argue that the entire complaint should be dismissed for lack of

12   specificity.  Dckt. No. 32 at 27.  They contend that plaintiff should be denied leave to amend

13   because there is no possible way she could cure the defects in her first amended complaint.  *Id.* at

14   28.  However, for the reasons set forth above, some of plaintiff's claims are specific enough to

15   survive the motion to dismiss, and others warrant another opportunity to cure by amendment.

16   III.   RECONSIDERATION OF DENIAL OF PRELIMINARY INJUNCTION

17        On November 14, 2012, the undersigned heard plaintiff's motion for a preliminary

18   injunction.  Plaintiff argued that defendants "commenced an unlawful foreclosure against [the]

19   subject property and none of the defendants have any lawful rights to foreclose on Plaintiff."  *Id.*

20

21       [5] A plaintiff must satisfy a two part test under the Declaratory Judgment Act, 28 U.S.C.
§ 2201, demonstrating that a declaratory judgment is appropriate.  *See Principal Life Ins. Co. v.*

22   *Robinson*, 394 F.3d 665, 669 (9th Cir. 2005).  The court must first determine if an actual case or
controversy exists; then, the court must decide whether to exercise its jurisdiction to grant the

23   relief requested.  *Id.*  For declaratory relief, there must be a substantial controversy, between
parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of

24   a declaratory judgment.  *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).
Further, declaratory relief should be denied if it will "neither serve a useful purpose in clarifying

25   and settling the legal relations in issue nor terminate the proceedings and afford relief from the
uncertainty and controversy faced by the parties."  *United States v. Washington*, 759 F.2d 1353,

26   1356-57 (9th Cir. 1985).

at 2.  Therefore, plaintiff sought to enjoin Deutsche Bank National Trust Company ("Deutsche Bank") and Western Progressive LLC ("Western Progressive") from foreclosing on the subject property.  *Id.*  At the hearing defendants assured the court that a foreclosure sale was not imminent.  After the hearing, the undersigned issued findings and recommendations on November 15, 2012, recommending denial of the preliminary injunction due to a failure to establish the likelihood of irreparable harm because defendants had not yet posted a Notice of Trustee's Sale, no sale date had yet been scheduled for the subject property, and at the hearing, "defense counsel represented that defendants would not notice such a sale until after the court has heard defendants' pending motion to dismiss and/or the parties have conducted an early settlement conference."  Dckt. No. 47 at 3.

On November 20, 2012, plaintiff filed a motion for the district court to reconsider those findings and recommendations.  Dckt. No. 48.  In the motion for reconsideration, plaintiff contends that defendants have now posted a Notice of Trustee's Sale, setting a sale date of December 14, 2012, even though defendants' counsel represented that defendants would not notice such a sale until after the court has heard defendants' pending motion to dismiss and/or the parties have conducted an early settlement conference.  *Id.*, Ex. 5.  Plaintiff also notes that the findings and recommendations specifically found that plaintiff failed to establish the irreparable injury element because the sale date had not yet been scheduled and since defendants' counsel represented that such a sale would not be set in the immediate future.  *Id.* at 4.

On November 26, the district judge referred that motion for reconsideration to the undersigned for "determination of what action, if any, should be taken."  Dckt. No. 49.  The undersigned then requested additional briefing, Dckt. No. 50, which the parties filed on November 28 and November 30.  Dckt. Nos. 53, 57.

Defendants argue that they only agreed at the hearing not to *sell* the house until after the motion to dismiss was heard; they did not agree not to *notice* such a sale.  Dckt. No. 53; *see also*

30

1   Dckt. No. 52 (objecting to the language used in the findings and recommendations).

2   Additionally, defendants contend that no foreclosure sale is currently scheduled.  Dckt. No. 53 at

3   3.  They contend that the sale was cancelled and no new date has been set by the Trustee.

4   Therefore, they argue that plaintiff still cannot show irreparable harm.  *Id.*  Defense counsel

5   contends that he checked the status of the sale on the internet website provided on the Notice of

6   Trustee's Sale and found no records indicating a sale date for the subject property.  Statsny

7   Decl., Dckt. No. 53 at 7-8, ¶¶ 8-9.  He also contends that he called Western, the foreclosure

8   trustee, and confirmed that the December 14, 2012 sale date was cancelled and there is no sale

9   date currently set.  *Id.* ¶ 10.

10          The court discussed the motion for reconsideration at the December 12, 2012 hearing on

11   defendants' motion to dismiss.  Although the motion for reconsideration was made to the district

12   judge, Local Rule 303(g) provides that "[t]he assigned Judge may also reconsider any matter at

13   any time sua sponte."  Additionally, Local Rule 230(j) provides that a motion for reconsideration

14   shall state "what new or different facts or circumstances are claimed to exist which did not exist

15   or were not shown upon such prior motion," and "why the facts or circumstances were not

16   shown at the time of the prior motion." E.D. Cal. L.R. 230(j)(3)(4).  Here, the fact that a sale

17   was, in fact, noticed notwithstanding the earlier representations to the court establishes new facts

18   upon which plaintiff's motion for reconsideration is based.

19          Although defendants may technically be correct that defense counsel only agreed not to

20   *sell* the property before the motion to dismiss could be heard, the court interpreted defendants'

21   representation that they would "agree to some postponement of any foreclosure sale up until the

22   motion can be heard, or the settlement conference could be completed" as a representation that

23   they would not move forward with the foreclosure process.  The fact of the matter is that a sale

24   was subsequently noticed and, even though the December 14, 2012 date has been cancelled,

25   defendants can and presumably will re-notice the sale whenever they wish.  Because the sale of

26   the home would amount to irreparable harm because real property is unique (even though

31

1     plaintiff does not live there, her tenants do), because plaintiff has raised serious questions as to

2     the merits of some of her claims (see above), and because the balance of equities tips in

3     plaintiff's favor and an injunction is in the public interest, the court will grant plaintiff's motion

4     for reconsideration and vacate the November 15, 2012 findings and recommendations, and will

5     instead recommend the issuance of a preliminary injunction precluding defendants from

6     proceeding with the foreclosure of the subject property while this action is pending.[6] *See Knopp*

7     *v. JP Morgan Chase Bank N.A.*, 2012 WL 3778879 (E.D. Cal. Aug. 31, 2012); *Rampp v. Ocwen*

8     *Financial Corp.*, 2012 WL 2995066 (S.D. Cal. July 23, 2012); *Miller v. Wells Fargo Bank,* 2012

9     WL 1945498 (N.D. Cal. May 30, 2012); *Howard v. Federal Home Loan Mortg. Corp.*, 2012 WL

10     639458 (E.D. Cal. Feb. 24, 2012).

11        Rule 65(c) states that a preliminary injunction may be issued "only if the movant gives

12     security in an amount that the court considers proper to pay the costs and damages sustained by

13     any party found to have been wrongfully enjoined or restrained." The court has wide discretion

14     in setting the amount of bond. *Bhandari v. Capital One, N.A.,* 2012 WL 3792766 (N.D. Cal.

15     Aug. 31, 2012).

16     ////

17

18        [6] As noted in the November 15, 2012 findings and recommendations, "[t]he standards for granting a temporary restraining order and a preliminary injunction are identical." *Haw. County*

19     *Green Party v. Clinton*, 980 F. Supp. 1160, 1164 (D. Haw. 1997); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir.2001) (observing that an analysis of a

20     preliminary injunction is "substantially identical" to an analysis of a temporary restraining order). In order to be entitled to preliminary injunctive relief, a party must demonstrate "that he

21     is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the

22     public interest." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 9 (2008)). Alternatively, "'serious questions going to

23     the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of

24     irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). A plaintiff seeking a preliminary injunction

25     "must establish that irreparable harm is likely, not just possible." *Id.* at 1131 (citing *Winter*, 555 U.S. at 20–21); *see also Connecticut v. Massachusetts*, 282 U.S. 660, 674 (1931) ("Injunction

26     issues to prevent existing or presently threatened injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future.").

1    Plaintiff requests that no bond be required because there is no realistic harm to

2 defendants if they are enjoined.  Dckt. No. 28 at 16; *see also* Dckt. No. 64.  Defendants argue,

3 however, that if an injunction is granted, plaintiff should be required to post a substantial bond to

4 cover outstanding arrears on the loan and cover the continued rental value of the property.  Dckt.

5 No. 35.  Specifically, defendants request that plaintiff be required to make her monthly loan

6 payment as security for the injunction, and propose that the court either require plaintiff to make

7 monthly bond payments directly to the court using certified funds and those funds be held in the

8 court's treasury account until the injunction is lifted, or require plaintiff to make monthly

9 certified payments to defense counsel, who would hold the funds in a client trust account.  Dckt.

10 No. 63 at 4.  In response to those proposals, plaintiff contends that if a bond is required, a

11 nominal bond in the amount of one month of fair market value rent would be sufficient.  Dckt.

12 No. 64 at 4.  Plaintiff further contends that she should be allowed to continue sending her

13 monthly online banking payments of $1,143.00 to Ocwen and they should not be returned, or the

14 court should act as a receiver of such payments so that plaintiff has "a banking record that those

15 payments were made." *Id.*

16    Here, the undersigned finds that the posting of security is a fair requirement and

17 determines that the proper amount of the bond is the pre-escrow account monthly mortgage

18 payment of $1,143.00.  Therefore, in order for the injunction to remain in place, every month (on

19 the first of the month or the first business day after if the first falls on a weekend or court

20 holiday), plaintiff must deposit with the Clerk of the Court a payment in the amount of

21 $1,143.00.[7]  The Court refers the parties to Local Rule 151 regarding the provision of a security

22 or bond.  If plaintiff fails to post the security within the required time, defendants may file a

23

24    [7] Although plaintiff contends that the court should act as a receiver for her monthly
online banking payments so that plaintiff has a banking record that those payments were made, if
25 plaintiff desires such a record, plaintiff may still elect to send the payment to Ocwen each month
as well.  Because plaintiff contends that the payments are ultimately rejected by Ocwen, plaintiff
26 would ultimately get that money back from Ocwen each month.

1  notice notifying the court of plaintiff's failure to comply and seeking modification of the

2  preliminary injunction.

3  IV.    <u>CONCLUSION</u>

4         As provided herein, IT IS HEREBY ORDERED that:

5         1.  Plaintiff's motion for reconsideration, Dckt. No. 48, is granted;

6         2.  The November 15, 2012 findings and recommendations, Dckt. No. 47, are vacated;

7         3.  The status (pretrial scheduling) conference currently set for February 13, 2012 is

8  continued to May 15, 2013 at 10:00 a.m. in Courtroom No. 8; and

9         4.  On or before May 1, 2013, the parties shall file status reports, as set forth in this

10  court's April 13, 2012 order, Dckt. No. 6.

11         IT IS FURTHER RECOMMENDED that:

12         1.  Defendants' motion to dismiss plaintiff's first amended complaint, Dckt. No. 32, be

13  granted in part and denied in part, as provided herein.

14         2.  Plaintiff be granted thirty days from the date of service of any order adopting these

15  findings and recommendations to file a second amended complaint as provided herein.  The

16  second amended complaint must bear the docket number assigned to this case and must be

17  labeled "Second Amended Complaint."  Failure to timely file a second amended complaint in

18  accordance with this order may result in a recommendation of dismissal for failure to prosecute.

19         3.  Defendants, and all other persons or entities who receive actual notice of the

20  preliminary injunction order by personal service or otherwise, be enjoined from noticing or

21  carrying out a trustee's sale of the real property located at 2428 Covered Wagon Circle, Elverta,

22  California 95626, and from engaging in, committing or performing, directly or indirectly, the

23  selling, transferring, conveying, or engaging in any other conduct adverse to plaintiff regarding

24  the real property.

25         4.  In order for the injunction to remain in place, every month (on the first of the month or

26  the first business day after if the first falls on a weekend or court holiday), plaintiff should be

required to deposit with the Clerk of the Court a payment in the amount of $1143.00.  *See* E.D. Cal. L.R. 151 (dealing with the provision of a security or bond).  If plaintiff fails to post the security within the required time, defendants may file a notice notifying the court of plaintiff's failure to comply.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  January 16, 2013.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE