1
2
3
4
5
6
7                    UNITED STATES DISTRICT COURT

8              FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10    RENEE' L. MARTIN,                         No.  2:12-cv-970-MCE-EFB PS

11                        Plaintiff,

12          v.                                  ORDER AND
                                                FINDINGS AND RECOMMENDATIONS
13    LITTON LOAN SERVICING LP, et al.,

14                        Defendants.

15

16          This action proceeds on plaintiff's second amended complaint.[1]  ECF No. 75.  The matter

17    is currently before the court on several motions.  Defendants Litton Loan Servicing LP ("Litton"),

18    Ocwen Loan Servicing LLC ("Ocwen"), Deutsche Bank National Trust Company ("Deutsche

19    Bank"), and Western Progressive LLC ("Western") move to dismiss plaintiff's Second Amended

20    Complaint (ECF No. 75) pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF No. 77.

21    Plaintiff filed an opposition, ECF No. 80, and also filed a motion for sanctions and a motion for

22    summary judgment.  ECF No. 85, 86.  Plaintiff has also filed an affidavit "in support of bias or

23    prejudice" citing to 28 U.S.C. § 144, which the court construes as a motion for recusal.  ECF No.

24    11.

25          Hearing on these motions was held on February 5, 2014.  Plaintiff appeared pro se.

26    Elizabeth Scott, Esq. appeared on behalf of defendants.  For the following reasons, plaintiff's

27    _____

28          [1]  This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to
      Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

                                          1

1  motion for recusal and motion for sanctions are denied.  Further, it is recommended that

2  defendants' motion to dismiss be granted and plaintiff's motion for summary judgment be denied

3  without prejudice.

4  I.     PROCEDURAL HISTORY

5          The procedural background of this case was previously set forth in the Order and Findings

6  and Recommendations filed on January 16, 2013 (ECF No. 65), which need not be repeated here.

7  Suffice it to say plaintiff initiated this lawsuit to prevent a foreclosure of a residence in Elverta,

8  California (the "subject property") that she acquired in 1996.  ECF No. 1 at 6.[2]  Her complaint

9  purported to assert a variety of federal and state law claims.  The crux of her claims is that she

10 timely paid her mortgage payments until a dispute arose between her and the mortgage servicer

11 over the payment of her delinquent property taxes.  Litton paid her delinquent property taxes and

12 then increased her monthly mortgage payment to collect for the taxes.  Plaintiff claims that this

13 was done without her permission and notes that she refused to pay the higher amount.  She

14 attempted to make payments at the previous monthly amount and not include the additional

15 amount for taxes, but those payments were not accepted.  Ultimately, Litton determined that she

16 was in default on the mortgage.

17         Plaintiff sought a temporary restraining order which was denied on April 13, 2012.  ECF

18 No. 7.  Thereafter, defendants filed a motion to dismiss and plaintiff filed another motion for a

19 temporary restraining order.  In the interim, plaintiff filed a motion to amend her complaint,

20 which was granted.  ECF Nos. 24, 25.  In light of the proposed amended complaint, the motion to

21 dismiss the earlier complaint was denied as moot.  The second motion for a temporary restraining

22 order was also denied.  ECF Nos. 23, 37.

23         Plaintiff filed her First Amended Complaint and a motion for a preliminary injunction and

24 the defendants moved to dismiss the amended complaint.  At the hearing on the motion for a

25 preliminary injunction, defendants' counsel represented that defendants would postpone "any

26 foreclosure sale up until the motion [to dismiss] could be heard, or the settlement conference

27 _____

28         [2]  Page numbers cited herein refer to those assigned by the court's electronic docketing
   system and not those assigned by the parties.

1   could be completed." ECF No. 60 at 11 of 13.  Based on that representation, the court concluded

2   that there was no imminent danger of irreparable harm and issued findings and a recommendation

3   that the motion for a preliminary injunction be denied without prejudice. ECF No. 47.  However,

4   plaintiff sought reconsideration of that recommendation and included evidence that,

5   notwithstanding the defendants' representation at the hearing, defendants had posted a Notice of

6   Trustee's Sale setting an imminent sale date.  The court heard arguments on December 12, 2012

7   on plaintiff's request for reconsideration and the defendants' motion to dismiss the First Amended

8   Complaint.  After supplemental briefing, the count granted reconsideration and recommended that

9   a preliminary injunction be granted (ECF No. 65 at 32, 34-35) and that the motion to dismiss be

10  granted in part and denied in part. *Id.* at 34.  That recommendation was adopted.  ECF Nos. 72,

11  84.

12      As noted, plaintiff filed a Second Amended Complaint, which is the subject of the current

13  motion to dismiss for failure to state a claim.

14  II.    AFFIDAVIT OF BIAS PURSUANT TO 28 U.S.C. § 144

15      In reviewing the file in preparation for the hearing on the instant motions, the court

16  noticed a document previously filed by plaintiff on April 23, 2012, and styled as an "affidavit of

17  bias" that cites to 28 U.S.C. § 144.  ECF No. 11.  Plaintiff states in the affidavit that she believes

18  that she will not be able to get a fair ruling in this case because the undersigned favors attorneys

19  over pro se litigants. *Id.* at 1.  Although plaintiff did not file and notice a motion for recusal, the

20  document has caused the court to consider whether there is any ground for recusal here. *See*

21  *United States v. Sibla*, 624 F.2d 864, 867 (9th Cir. 1980) (consideration of a motion brought

22  pursuant to section 144, "should also prompt the judge to whom the motion is directed to

23  determine independently whether all the circumstances call for recusal under the self-enforcing

24  provisions of section 455(a) & (b)(1).").  As discussed below, there is not.

25      According to plaintiff, the undersigned's bias is shown by (1) the denial of plaintiff's

26  April 12, 2012 motion for a temporary restraining order, and (2) an adverse decision issued

27  against plaintiff in an unrelated case, *FIA Card Services, N.A. v. Martin*, No. 2:11-cv-2647-LKK-

28  EFB. *Id.* at 1-3.  Although the affidavit was filed on April 23, 2012, no motion was noticed for

3

1    hearing in accordance with Local Rule 230.  Nor did plaintiff previously bring the affidavit to the

2    court's attention during the several opportunities she has had to do so.[3]  As indicated by this

3    case's procedural history and as discussed at the hearing, this action has been before the court on

4    several occasions for various motions.  Plaintiff did not mention her affidavit of bias in any of her

5    motions seeking injunctive relief, nor did she raise the issue in her oppositions to defendants'

6    motions to dismiss.  To the contrary, plaintiff has actually made statements that contradict her

7    allegations of bias.  At the October 14, 2014 hearing on plaintiff's motion for a preliminary

8    injunction, the undersigned discussed with the parties the possibility of scheduling a settlement

9    conference.  ECF No. 60.  In those discussion plaintiff expressly stated her willingness to waive

10   the undersigned's disqualification to preside over the settlement conference.  *Id.* at 10 ("I feel

11   that you are fair, and I would be willing to agree to you.").

12        28 U.S.C. § 455 provides that "[a]ny justice, judge, or magistrate judge of the United

13   States shall disqualify himself in any proceeding in which his impartiality might reasonably be

14   questioned."  28 U.S.C § 455(a).  He shall also disqualify himself when he has "a personal bias or

15   prejudice concerning a party . . . ."  *Id.* § 455(b)(1).  The standard for determining whether

16   impartiality might be reasonably questioned is "whether a reasonable person with knowledge of

17   all the facts would conclude that the judge's impartiality might be questioned."  *United States v.*

18   *Holland*, 519 F.2d 909, 913 (9th Cir. 2008).  Although a judge must recuse himself in those

19   circumstances, he must not simply recuse out of an abundance of caution when the facts do not

20   warrant recusal.  Rather, there is an equally compelling obligation not to recuse where recusal is

21   not appropriate.  *See Holland*, 519 F.3d at 912 ("We are as bound to recuse ourselves when the

22   law and facts require as we are to hear cases when there is no reasonable factual basis for

23   recusal.").  The U.S. Court of Appeals for the Ninth Circuit has explained a judge's obligation to

24   sit on assigned cases as follows:

25   /////

26   ───────────────────

         [3] It was not until December 5, 2013, nearly two years after filing her affidavit, that
27   plaintiff submitted a pleading that referenced her affidavit.  ECF No. 94.  That document
     contained plaintiff's objections to the court continuing the hearing on her motion for summary
28   judgment.

                                                     4

> We begin with the general proposition that, in the absence of a legitimate reason to recuse himself, "a judge should participate in cases assigned." This proposition is derived from the "judicial Power" with which we are vested. *See* U.S. CONST. art. III, § 1. It is reflected in our oath, by which we have obligated ourselves to "faithfully and impartially discharge and perform [our] duties" and to "administer justice without respect to persons, and do equal right to the poor and to the rich." 28 U.S.C. § 453. Without this proposition, we could recuse ourselves for any reason or no reason at all; we could pick and choose our cases, abandoning those that we find difficult, distasteful, inconvenient or just plain boring. Our mythic Justice, represented by a blindfolded figure wielding a balance and a sword, hears all cases coming before her, giving no preference-whether in priority or result-to the station or economic status of such persons.

*Id.* at 912 (internal citations omitted).

As previously stated, plaintiff contends that the undersigned is biased against her and pro se litigants. She contends the undersigned's bias against her is shown by the denial of her April 12, 2012 motion for a temporary restraining order. ECF No. 11 at 1-2. However, an adverse ruling alone is not a sufficient basis for recusal. *See Liteky v. United States*, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion").

Plaintiff further contends an adverse ruling against her in an unrelated case demonstrates bias. In *FIA Card Services, N.A. v. Martin*, No. 2:11-cv-2647-LKK-EFB, plaintiff filed a notice of removal of a collection action from the Superior Court of the State of California for the County of Sacramento. In that case, the undersigned issued findings and recommendations recommending that the action be remanded because this court lacked subject matter jurisdiction. On May 8, 2012, the assigned district judge, Judge Karlton, adopted the findings and recommendations in full and remanded the case to the Sacramento County Superior Court for lack of federal jurisdiction.

Again, an adverse ruling, even in another case, is not a sufficient basis for recusal. *See Liteky*, 510 U.S. at 555-56 ("[O]pinions formed by the judge on the basis of facts introduced or events occurring in the courts of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."). Thus, plaintiff is left with her

5

conclusion that the undersigned is biased against her because she is proceeding pro se, and the undersigned is allegedly biased against pro se litigants.  This conclusory statement alone is not sufficient to lead a "reasonable person with knowledge of all the facts [to] conclude that the judge's impartiality might be questioned."  *Holland*, 519 F.2d at 913.  Accordingly, there is no basis for recusal under section 455.

There is also no basis for recusal under 28 U.S.C. § 144.  That section provides that "[w]hen a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding."  28 U.S.C. § 144.  The judge against whom the affidavit is filed has the authority to determine whether the affidavit is legally sufficient.  *Berger v. United States*, 255 U.S. 22, 32-34 (1922); *United States v. Scholl*, 166 F.3d 964, 977 (9th Cir. 1999).  "An affidavit filed pursuant to [section 144] is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source."  *United States v. Sibla*, 624 F.2d 864, 868 (holding that an affidavit was insufficient under section 144 because it contained only conclusions and was devoid of specific factual allegations showing personal bias stemming from an extrajudicial source).

Plaintiff's affidavit is insufficient because it is devoid of any facts that fairly support her assertion of bias.  The affidavit rests entirely on her contention that the undersigned is biased against her because she has received adverse rulings.  As explained above, adverse judicial rulings alone are insufficient to establish bias.  Accordingly, there is no basis for recusal.  *See Liteky*, 510 U.S. at 555.  Therefore, plaintiff's affidavit, construed here as a motion for recusal, is denied.

III.     MOTION TO DISMISS

A.     Second Amended Complaint

Plaintiff's second amended complaint again purports to assert several state and federal claims, including: (1) an alleged violation of the Real Estate Settlement and Procedures Act

("RESPA"), 12 U.S.C. § 2605; (2) a state law claim for quasi contract; (3) "No Contract" claim; (4) a state law claim to quiet title; (5) a state law tort claim for intentional infliction of emotional distress; (6) claim for alleged violation(s) of the Fair Debt Collection Practices Act ("FDCPA"); (7) a claim for an alleged violation of the Internal Revenue Code; and (8) a state law tort claim for negligent misrepresentation.  Defendants move to dismiss all of plaintiff's claims, except plaintiff's sixth cause of action, which alleges violations of the FDCPA.  ECF No. 77.

Plaintiff refinanced her mortgage for the subject property on March 5, 2004.  ECF No. 75 at 6 (¶ 18).  The loan agreement for that refinance required her to repay a principle amount of $185,250 with an adjustable interest rate of 6.2% by way of monthly payments in the amount of $1,134.60.  *Id.* at 36 (Exh. 1 to the complaint).  However, a dispute arose over whether the loan servicer could require plaintiff to pay an additional $85.00 per month into an escrow account for payment of the property taxes on the residence.  As discussed below, plaintiff refused to do so, and the loan servicer declined to accept her payments for the lower amount.

The crux of plaintiff's allegations is that she has paid all of her mortgage payments and that the only basis for the alleged default is the fact that Litton paid her delinquent property taxes and then increased her payment (via an escrow account to recoup the property taxes) unnecessarily and without her permission.  She contends that she continued to pay the amount of her agreed upon mortgage payment but defendants stopped accepting her payments because she did not include the additional amount to cover her property taxes in the total amount paid each month.  Therefore, defendants deemed her to be in default.

The dispute over the escrow requirement arises from an August 9, 2010 correspondence sent to plaintiff informing her that "an escrow advance repayment plan" had been established for her.  ECF No. 75 at 73.  The letter informed plaintiff that "[t]his will pay the escrow advance for your property taxes and/or homeowner's insurance."  *Id.*  Significantly, plaintiff's own complaint explains the purpose for establishing the escrow in 2010.  As plaintiff elaborates, she:

> "received a letter from Litton dated July 2, 2010 advising that the property taxes for year 2009/2010 were delinquent.  In this letter on paragraph 4 states [sic] 'If you are having difficulty paying your property taxes, please contact the taxing authority' . . . .  Plaintiff did this and was advised that by [sic] Sacramento County Property

1    Tax Authorities that Sacramento County taxing authorities will ***not***
     auction or foreclose on the property until six (6) years being
2    delinquent; which would make the subject property in jeopardy by
     year 2015."
3

4    ECF No. 75 at 10 (Second Amended Complaint, ¶ 34) (emphasis in the original).  Thus, it is clear

5    from the face of the complaint and its attachments that plaintiff was in default on her property tax

6    payments, and further, that to ensure that the property was not subjected to a tax lien the loan

7    servicer established an escrow account and required plaintiff to pay an additional monthly amount

8    to pay her taxes.

9        It is also clear from the attachments to the complaint that the loan agreement for the

10   refinancing did, indeed, provide for an escrow to cover property taxes.  It states that "Borrower

11   shall also pay funds for Escrow Items pursuant to Section 3."  *Id*. at 42.  Section 3 expressly

12   provides that "Borrower shall pay to Lender on the day Periodic Payments are due under the Note

13   . . . a sum (the 'Funds') to provide for payment of amounts due for: (a) *taxes* and assessments and

14   other items which can attain priority over this Security Instrument as a lien or encumbrance on

15   the property."  *Id.* at 43 (emphasis added).

16       Apart from plaintiff's contention that she could not be required to make additional

17   monthly payment in the amount necessary to pay for her property taxes, plaintiff also alleges that

18   she did not sign many of her mortgage documents and on that basis she disputes their validity.

19   She also contends that she was not properly notified of the transfer of her mortgage from Litton to

20   Ocwen.  On that basis, she contends that the transfer is void and Ocwen could not collect her

21   mortgage payments.  She further contends that she has been harassed by both Litton and Ocwen,

22   and she contends that they are both damaging her credit by inaccurately reporting that she was

23   delinquent in her mortgage payments.  Plaintiff also contends that none of the defendants have

24   any recorded interest in the property.

25       Much of the facts pertaining to the loan and the dispute over the tax and escrow account

26   question can be determined from the complaint and its attachments alone.  However, defendants

27   have submitted a request for judicial notice which indicates that the deed of trust was assigned to

28   defendant Deutsche Bank on March 19, 2004 and that Western Progressive is an agent for

Deutsche Bank.  The assignment was recorded on August 16, 2012.  Defs.' Req. for Jud. Notice, ECF No. 78, Exs. B, C.  Plaintiff, on the other hand, alleges that deed of trust was never assigned to Deutsche Bank.  ECF No. 75 ¶ 76.

　　　　B.  Rule 12(b)(6) Standards

　　　　To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."  *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

　　　　In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  *Jenkins v. McKeithem*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969).  The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'"  *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

　　　　Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985).  The Ninth Circuit has held that the less stringent standard for pro se parties is now higher in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally.

1  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  However, the court's liberal interpretation of

2  a pro se litigant's pleading may not supply essential elements of a claim that are not plead.  *Pena*

3  *v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d

4  266, 268 (9th Cir. 1982).  Furthermore, "[t]he court is not required to accept legal conclusions

5  cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the

6  facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither

7  need the court accept unreasonable inferences, or unwarranted deductions of fact.  *W. Mining*

8  *Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

9      Of particular relevance here is the principle that in deciding a Rule 12(b)(6) motion to

10  dismiss, the court may consider facts established by exhibits attached to the complaint.  *Durning*

11  *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  Indeed, the court relies heavily on

12  the plaintiff's own exhibits that she has attached to the complaint.  The court may also consider

13  facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1338, and matters of

14  public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South*

15  *Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

16      C.  <u>Plaintiff's Federal Claims</u>

17          1.  <u>RESPA, 12 U.S.C. § 2605</u>

18      Plaintiff alleges that defendants Litton and Ocwen violated the Real Estate Settlement and

19  Procedure Act ("RESPA"), 12 U.S.C. § 2605.  Plaintiff contends that Litton violated RESPA by

20  not giving plaintiff 15 days' notice of a new servicer.  ECF No. 75 ¶ 67.  Plaintiff claims that as a

21  result she incurred an additional $15.00 fee through western union to wire her November 2011

22  payment to Ocwen after she had previously wired this payment to Litton.  *Id*. ¶ 69.  She also

23  alleges that she incurred additional costs associated with litigating this action.  *Id*.  In regards to

24  Ocwen, plaintiff claims that it violated RESPA by assessing a late fee against plaintiff when she

25  sent her November 2011 payment to Litton, not Owen.  *Id*. ¶ 70.

26      RESPA provides that when the servicer of a loan changes, the borrower is entitled to

27  notice.  12 U.S.C. § 2605(b)(1), (c)(1), 24 C.F.R. § 3500.21(d)(1)(i).  Specifically, the transferor

28  must provide notice not less than fifteen days before the effective transfer of the loan, 12 U.S.C.

1   § 2605(b)(2)(A), 24 C.F.R. § 3500.21(d)(2)(i)(A), and the transferee must provide notice not

2   more than 15 days after the date of effective transfer.  12 U.S.C. § 2605(c)(2)(A), 24 C.F.R.

3   § 3500.21(d)(2)(i)(B).  These provisions further provide that, for a sixty day period beginning on

4   the date of the effective transfer, if a borrower sends their payment to the transferor (instead of

5   the transferee, where the payment should be sent), the borrower will not be charged a late fee.  12

6   U.S.C. § 2605(d); 24 C.F.R. § 3500.21(d)(5).

7       Plaintiff alleges that she received a notice, dated October 4, 2011, stating that servicing for

8   her loan was being transferred to Ocwen effective November 1, 2011.  ECF No. 75 ¶ 42.

9   However, plaintiff claims to have not received the letter until October 27, 2011, and she alleges

10  that Litton backdated the letter.  *Id*.  Accepting plaintiff's allegations as true, Litton's notice of

11  transfer was sent just prior to October 27, 2011, less than 15 days before the November 1, 2011

12  transfer date, in violation of 12 U.S.C. § 2605(b)(2)(A).

13      As for plaintiff's claims against Ocwen, plaintiff alleges that Ocwen assessed a late fee

14  against plaintiff when plaintiff sent her November 2011 payment to Litton, not Ocwen.  RESPA

15  specifically requires that where a borrower pays the transferor service within the first sixty days

16  of the effective date of transfer, the borrower will not be charged a late fee.  12 U.S.C. § 2605(d);

17  24 C.F.R. § 3500.21(d)(5).

18      Defendants argue that plaintiff's RESPA claims fail because RESPA does not apply to the

19  loan at issue in this case.  ECF No. 77 at 5.  *Id*.  According to defendants, plaintiff concedes that

20  the subject property is an investment property and RESPA does not cover commercial

21  transactions.[4]  ECF No. 77 at 5.

22       "Congress enacted [RESPA] in 1974 to protect consumers from abusive practices in

23  mortgage closings."  *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir.

24  2011).  The protections provided by RESPA, however, do "not apply to credit transactions

25  involving extensions of credit [] primarily for business, commercial, or agricultural purposes."  12

26  U.S.C. § 2606; *see Johnson*, 635 F.3d at 417-419.  Extensions of credit to purchase, improve, or

27

28      [4] The address plaintiff uses for her pleadings in this case is American Canyon, California,
    not Elverta, California, and her complaint states that the property is occupied by tenants.

1   maintain a non-owner-occupied rental are deemed to be for business purposes and are not covered

2   by RESPA.  *Johnson*, 635 F.3d at 417.

3        The determination as to whether a loan is for a personal or business purpose is decided on

4   a case by case basis.  *Thorn v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984).  "In

5   evaluating whether a certain loan was primarily for business purposes under RESPA, courts apply

6   the same standards as are used under [the Truth in Lending Act.]"  *Galindo v. Financo Financial,*

7   *Inc.*, 2008 WL 4452344 (N.D. Cal. Oct.3, 2008).  This analysis requires an examination of:

8         [1] The relationship of the borrower's primary occupation to the
          acquisition.  The more closely related, the more likely it is to be
9         business purpose.

10        [2] The degree to which the borrower will personally manage the
          acquisition.  The more personal involvement there is, the more
11        likely it is to be business purpose.

12        [3] The ratio of income from the acquisition to the total income of
          the borrower.  The higher the ratio, the more likely it is to be
13        business purpose.

14        [4] The size of the transaction.  The larger the transaction, the more
          likely it is to be business purpose.
15

16        [5] The borrower's statement of purpose for the loan.

17   *Thorn*, 726 F.2d at 1419.

18        Here, plaintiff states in her opposition that she resided in the subject property at the time

19   of the 2004 refinance.  She further states that the loan was "never a commercial loan."  ECF No.

20   80 at 39.  These allegations, however, do not appear in the second amended complaint.  Rather,

21   the operative complaint alleges that tenants were residing in the subject property and that plaintiff

22   lived at a different address.  *See* Second Am. Compl. ¶¶ 44-46.  Accordingly, the second amended

23   complaint does not adequately allege that the loan at issue is subject to RESPA.  Therefore,

24   plaintiff's RESPA claims must be dismissed.  *See Daniels v. SCME Mortgage Bankers, Inc.*, 680

25   F. Supp. 2d 1126, 1129-30 (C.D. Cal. 2010) ("[B]ecause Plaintiff's Second Amended Complaint

26   fails to allege any facts regarding Plaintiff's principle purpose in obtaining the loan, Plaintiff has

27   failed to state a claim under TILA and RESPA.");  *Galindo v. Financo Financial, Inc.*, 2008 WL

28   4452344 (N.D. Cal. Oct 3, 2008) (dismissing RESPA claim because plaintiff failed to allege facts

12

1  detailing the purpose of the loan).  Plaintiff will be granted leave to amend as to this question if

2  she can in good faith allege facts establishing this element of a RESPA claim.[5]

3          2.  No contract

4          Defendants construe plaintiff's "no contract" claim as an attempt to rescind the loan

5  agreement.  In her third claim for relief, she alleges that the initials present on the deed of trust

6  that purport to be hers, are not actually hers.  Therefore, she concludes, there was no contract

7  between her and Long Beach.  She further reasons that if there was no contract with Long Beach,

8  there would also be no contact with Washington Mutual, [6] and therefore defendants do not have

9  the right to receive payments under plaintiff's mortgage loan or to foreclose on the subject

10  property.

11          Plaintiff asserts that because she did not properly initial the deed of trust, the instrument

12  should be considered void and fraudulent.  Plaintiff also alleges that she never received the proper

13  disclosures, including disclosures regarding her right to rescind, and copies of documents

14  containing plaintiff's true signatures and initials.  ECF No. 75 ¶ 81.  Plaintiff contends that these

15  facts give rise to an "extended right to rescind" pursuant to 15 U.S.C. § 1635.

16          Defendants argue that plaintiff's claim that the deed of trust is void is barred under the

17  Truth in Lending Act's ("TILA") three-year statute of limitations for rescission claims.  15 U.S.C.

18  § 1635(f).  Defendants also point out that plaintiff's claim is attempting to rescind a contract she

19  agreed to and under which she has allegedly performed for eight years, and yet expects to keep

20  the benefit of that contract without repayment of the principal used to purchase/refinance the

21  property.  ECF No. 77 at 7.

22          At the February 5 hearing, plaintiff stated that she was not asserting a rescission claim.

23  She also acknowledged that such a claim would be barred by the statute of limitations.  While the

24  text of the complaint suggests otherwise, the court accept these representations, and confirms that

25          [5] Plaintiff's own pending motion for Rule 11 sanctions demonstrates that she is aware of

26  the ramifications of including in any future amended complaint unfounded factual
representations.

27

28          [6] She also alleges that whatever contract she believed she was entering into with
Washington Mutual did not include a contract with the defendants.

1   plaintiff does not intend to assert a rescission claim under TILA.  Rather, plaintiff is attempting to

2   challenge defendants' interest in the deed of trust and ability to collect her mortgage payments.

3   However, there appears to be no factual or legal basis for doing so.

4        At the February 5 hearing, plaintiff stated that she is asserting that there is no contract

5   between her and defendants, and therefore defendants do not have any right to demand her

6   mortgage payments.  But she conceded at the hearing that she did have a contract with Long

7   Beach, the entity with which plaintiff refinanced her loan in March 2004.  Further, documents

8   that she attached to her second amended complaint reflect that on March 5, 2004, plaintiff

9   executed a promissory note in the amount of $185,250.  ECF No. 75 at 36-37.  The Loan was

10  secured by a Deed of Trust, identifying plaintiff as the borrower and Long Beach Mortgage

11  Company as the Lender and Trustee.  *Id*. at 40-41.  Those appended documents refute plaintiff's

12  allegations that defendants did not have a right to receive her monthly mortgage payments.  They

13  include a copy of the assignment of the deed of trust, assigning Long Beach's beneficial interest

14  under the deed of trust to Deutsche.  ECF No. 75 at 81.[7]  Plaintiff contends that the document is

15  fraudulent for a variety of reasons, but as shown below, her contention is based on a misreading

16  of the document and a misunderstanding of applicable law.

17       First, plaintiff takes issue with the fact that the Deutsche's designation as assignee was not

18  typed, but handwritten.  Plaintiff, however, has provided no authority supporting her position that

19  an assignment of a deed of trust cannot be filled out by hand.  Next, plaintiff claims that the

20  assignment indicates that it was purportedly recorded on March 16, 2004, but also reflects that the

21  assignment was executed on March 19, 2004.  Plaintiff contends that this inconsistency shows

22  that the document is fraudulent.  ECF No. 80 at 7.  However, it is apparent that plaintiff is

23  misreading the document.  The document does not state that the *assignment* of the Deed of Trust

24  was recorded on March 16, 2004.  Rather, it indicates that the deed of trust, which was executed

25  by plaintiff on March 5, 2004, was recorded on March 16, 2004, and that Long Beach assigned its

26

27       [7]  Defendants also submitted a copy of the assignment of deed of trust with their request
    for judicial notice.  ECF No. 78 at 28-29 (Ex. B).  The court need not take judicial notice of this
    document as plaintiff has attached a copy of it to her second amended complaint, which is now
28  part of her complaint.

1    interest in the Deed of Trust to Deutsche on March 19, 2004.  ECF No. 75 at 81.  There is nothing

2    involving the dates depicted on the document that can support a claim that the document is

3    fraudulent.

4           Plaintiff also contends that the document is fraudulent because it provides that it was

5    executed by plaintiff.  ECF No. 80 at 7.  Again, plaintiff misreads the document.  The assignment

6    states that plaintiff executed the deed of trust; it does not state that plaintiff executed the

7    *assignment* of the deed of trust.  ECF No. 75 at 80.

8           Lastly, plaintiff contends that the assignment is not valid because defendants did not

9    record the assignment of the deed of trust until August 6, 2012.  ECF No. 80 at 6; *see also* ECF

10   No. 75 at 80 (copy of the assignment reflecting that it was recorded on August 6, 2012).  The fact

11   that Deutsche waited more than eight years to record the assignment does not render it invalid.

12   *See Parcray v. Shea Mortg., Inc.*, 2010 WL 1659369, * 11 (E.D. Cal. April 23, 2010) ("There is

13   no requirement under California law for an assignment to be recorded in order for the assignee

14   beneficiary to foreclose.") (citing *Roque v. Suntrust Mortg., Inc.*, 2010 WL546896, * 3-5 (N.D.

15   Cal. Feb. 10, 2010)).  Accordingly, plaintiff's allegation that Deutsche was not assigned the Deed

16   of Trust is directly contradicted by her own statements and the documents attached to the second

17   amended complaint.  Furthermore, plaintiff alleges that Litton and Ocwen are servicers for

18   Deutsche.  ECF No. 75 ¶ 76.  Thus, these defendants could collect plaintiff's mortgage payment

19   on behalf of Deutsche.

20          While the text of the complaint makes it difficult to discern the precise cause of action

21   plaintiff attempts to assert in her "no contract" claim, plaintiff has clarified that she is attempting

22   to challenge defendants' interest in the Deed of Trust and ability to collect her mortgage

23   payments.  Such a challenge fails because, as plaintiff concedes, she had a contract with Long

24   Beach and documents she appended to her complaint show that Long Beach assigned its interest

25   to Deutsche.  Since Litton and Ocwen are servicers for Deutsche, plaintiff cannot maintain a

26   claim challenging defendants' interest in the Deed of Trust or right to collect plaintiff's mortgage

27   payments.  Accordingly, plaintiff's "no contract" claim simply fails to state a claim upon which

28   /////

15

1    relief may be granted and must therefore be dismissed.  As leave to amend would be futile, the

2    dismissal of this claim should be without further leave to amend.

3                               3.  Internal Revenue Code

4           Plaintiff also purports to assert a claim under the Internal Revenue Code.  She claims that

5    her loan was never properly transferred into a loan trust and is simply nonexistent.  ECF No. 75

6    ¶ 103.  She contends that by claiming that her loan has been transferred into a loan trust, the

7    defendants have qualified for favorable tax treatment and avoided tax liability.  *Id.* ¶ 104.

8    Plaintiff alleges that if it was discovered that defendants were violating the Internal Revenue

9    Code, defendants could incur substantial tax liability and penalties.  *Id.* ¶ 107.  Even if her

10   allegations are taken as true, plaintiff fails to cite any authority that any provision of the Internal

11   Revenue Code provides for a private right of action.  Further, plaintiff lacks standing to assert

12   such a claim.

13          A plaintiff is required to establish standing for each claim she asserts.  *DaimlerChrysler*

14   *Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  If a plaintiff has no standing, the court has no subject

15   matter jurisdiction.  *Nat'l Wildlife Fed'n v. Adams*, 629 F.2d 587, 593 n. 11 (9th Cir. 1980)

16   ("[B]efore reaching a decision on the merits, we [are required to] address the standing issue to

17   determine if we have jurisdiction.").  There are three requirements that must be met for a plaintiff

18   to have standing: (1) the plaintiff must have suffered an "injury in fact"—an invasion of a legally

19   protected interest which is both concrete and particularized and actual or imminent; (2) there must

20   be a causal connection between the injury and the conduct complained of; and (3) it must be

21   likely that the injury will be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*,

22   504 U.S. 555, 560–611 (1992); *Wash. Legal Found. v. Legal Found. of Wash.*, 271 F.3d 835, 847

23   (9th Cir. 2001) (en banc).

24          Plaintiff only alleges that defendants have gained a tax benefit that they are not entitled to

25   receive.  She does not provide allegations showing how defendants' allegedly wrongful

26   obtainment of favorable tax treatment resulted in a concrete and particularized injury to her

27   because of that tax treatment.  Accepting as true plaintiff's allegations that defendants defrauded

28   the government to gain favorable tax treatment, plaintiff cannot show that such conduct harmed

1    her.  Accordingly, plaintiff lacks standing to assert her claim for violation of the Internal Revenue

2    Code and this claim must be dismissed without leave to amend.  *See DaimlerChrysler Corp*, 547

3    U.S. at 333 (plaintiff does not have standing where the only harm alleged is one that is shared

4    with millions of other tax payers).

5           D.   Plaintiff's State Law Claims

6           A district court should decline to exercise supplemental jurisdiction over state law claims

7    if the court has dismissed all the claims over which it has original jurisdiction.  *Carlsbad Tech.,*

8    *Inc. v. HIF BIO, Inc.*, 556 U.S. 635, 639-40 (2009); *Albingia Versicherungs A.G. v. Schenker Int'l*

9    *Inc.*, 344 F.3d 931, 936 (9th Cir. 2003); 28 U.S.C. § 1367(c) ("The district courts may decline to

10   exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has

11   dismissed all claims over which it has original jurisdiction.").  Although plaintiff's RESPA, no

12   contract, and Internal Revenue Code claims must be dismissed, defendants did not move to

13   dismiss plaintiff's Fair Debt Collection Practices Act claim, a claim over which this court has

14   original jurisdiction.  *See* 28 U.S.C. § 1331.  Accordingly, the court must still address plaintiff's

15   supplemental state law claims.

16           1.   Quasi Contract

17           Plaintiff alleges that she made monthly mortgage payments to Litton from July 2006 to

18   October 1, 2011.  ECF No. 75 ¶ 74.  After Litton notified plaintiff that Ocwen would be servicing

19   the loan effective November 1, 2011, plaintiff began making monthly mortgage payments to

20   Ocwen, and continues to make her payments to Ocwen to date.  *Id.*  Plaintiff claims that both

21   defendants knowingly accepted the payments and retained them for their own use knowing that

22   Washington Mutual was still the servicer for the loan and that neither defendant acquired any

23   right from Washington Mutual to accept or keep plaintiff's payments.  Plaintiff alleges that she

24   ignorantly believed that Litton was the servicer of the loan, but that she recently discovered that

25   Washington Mutual had not provided her with any correspondence stating that Litton would

26   service the loan.  Plaintiff contends that neither defendant has any authority pertaining to the

27   "purported trust."  *Id*. ¶ 75.

28   /////

1   Plaintiff further alleges that neither Washington Mutual nor Long Beach ever assigned the

2   trust to Deutsche Bank.  According to plaintiff, since Litton and Ocwen are servicers for

3   Deutsche, and Deutsche was never assigned the deed of trust, Litton and Ocwen never had a legal

4   right to accept payments from plaintiff.  *Id*. ¶ 76.  Therefore, plaintiff seeks restitution for all

5   payments made to Litton and Ocwen in the approximate amount of $100,000.  *Id*. ¶ 77 at 6.

6   Defendants move to dismiss this claim, arguing that it fails as a matter of law.  They argue

7   that a quasi-contract action for unjust enrichment does not lie where there is an express binding

8   agreement and defined parties.  According to defendants, the note and deed of trust created an

9   express binding contract that defined plaintiff's rights with regard to any payments made to

10   defendants, the servicers of the loan.  Defendants contend that plaintiff's quasi-contract claim

11   fails because it is factually incorrect because Long Beach Mortgage assigned its interest under the

12   deed of trust to Deutsche a few weeks after plaintiff entered into the deed of trust.  ECF No. 77.

13   "Whether termed unjust enrichment, quasi-contract, or quantum meruit, the equitable

14   remedy of restitution when unjust enrichment has occurred 'is an obligation (not a true contract)

15   created by the law without regard to the intention of the parties, and is designed to restore the

16   aggrieved party to his or her former position by return of the thing or its equivalent in money.'"

17   *McLaughlin v. Wells Fargo Bank, N.A.*, 2012 WL 5994924, at *8 (C.D. Cal. Nov. 30, 2012)

18   (citing 1 Witkin, *Summary of Cal. Law* (10th ed. 2005) Contracts, § 1013, p. 1102)).  "[A]n

19   individual may be required to make restitution if he is unjustly enriched at the expense of another.

20   A person is enriched if he receives a benefit at another's expense.  The term 'benefit' 'denotes

21   any form of advantage.' . . . Even when a person has received a benefit from another, he is

22   required to make restitution 'only if the circumstances of its receipt or retention are such that, as

23   between the two persons, it is unjust for him to retain it.'"  *F.D.I.C. v. Dintino*, 167 Cal. App. 4th

24   333, 346-47 (2008).

25   The point missed by plaintiff is that her allegations fail to show that either entity has been

26   enriched, let alone wrongfully so.  She asserts no facts showing that payments were received from

27   her but not properly credited to her mortgage balance.  Her current complaint alleges that the deed

28   of trust was never transferred from Long Beach Mortgage to Deutsche.  It alleges that since

18

1    Deutsche was not a party to the deed of trust and it had no interest in the deed of trust, that Litton

2    and Ocwen were not authorized to collect payments from plaintiff on Deutsche's behalf.  It also

3    alleges that Litton and Ocwen falsely represented that they were the servicers of the loan and that

4    plaintiff made her mortgage payments to these defendants based on their representations.  But

5    plaintiff fails to allege that her mortgage account was never credited with the payments to Litton

6    and Ocwen.

7        At the February 5 hearing, plaintiff again argued that Litton and Ocwen were not

8    authorized to collect her loan payments.  However, plaintiff acknowledged that Litton and Ocwen

9    did not keep her payments for themselves.  She conceded that the payments she submitted to

10   Litton and Ocwen were used to credit the money she owed on her loan.  Although plaintiff

11   contends that Litton and Ocwen were not authorized to collect payments for her loan, a belief that

12   is contradicted by her own statements and documents attached the compliant, she cannot state a

13   claim for unjust enrichment against defendants when the payments that were collected were used

14   for their intended purpose—to pay down the amount owed under the loan—and they did not keep

15   the money for themselves.  Accordingly, plaintiff's claim for unjust enrichment must be

16   dismissed.  As amendment would futile, the claim should be dismissed without leave to amend.

17              2.  Quite Title

18       Plaintiff seeks to quiet title as of March 8, 2004.  Specifically, she seeks a judicial

19   declaration that the title to the subject property is vested in plaintiff alone and that the defendants

20   have no interest, right, or title to the property.  ECF No. 75 ¶ 85.  Defendants move to dismiss this

21   claim, arguing that it fails because plaintiff has not alleged valid and/or viable tender of the

22   indebtedness.  ECF No. 77 at 7-8.

23       The purpose of a quiet title action "is to settle and determine, as between the parties, all

24   conflicting claims to the property in controversy, and to decree to each such interest or estate

25   therein as he may be entitled to."  *Peterson v. Gibbs*, 81 P. 121, 123 (Cal. 1905).  To establish a

26   claim for quiet title, plaintiff must file a verified complaint that alleges: (a) a description of the

27   property; (b) plaintiff's title as to which a determination is sought; (c) the adverse claims to the

28   title; (d) the date as to which the determination is sought; and (e) a prayer for the determination of

1    title.  Cal. Civ. Proc. Code § 761.020.  "In order to satisfy the second requirement, [the] plaintiff

2    must allege that he has discharged his debt, regardless to whom it is owed."  *Ananiev v. Aurora*

3    *Loan Svcs.*, 2012 WL 4099568 (N.D. Cal. Sep. 17, 2012).  This requires a plaintiff to show "that

4    they are the rightful owners of the property, i.e.[,] that they have satisfied their obligations under

5    the Deed of Trust."  *Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1057

6    (N.D. Cal. 2009).

7         The second amended complaint and its attachments show that plaintiff executed a

8    promissory note in the amount of $185,250.  ECF No. 75 at 36-37.  The loan was secured by a

9    Deed of Trust, identifying plaintiff as the borrower and Long Beach Mortgage Company as the

10   Lender and Trustee.  *Id.* at 40-41.  The Deed of Trust was assigned to Deutsche on March 5,

11   2004.  *Id.* at 81.  Plaintiff has not alleged that she tendered the full principal due under the note

12   and therefore fails to state a quiet title claim.[8]  *See Distor v. U.S. Bank, NA*, 2009 WL 3429700, at

13   * 6 (N.D. Cal. Oct. 22, 2009) ("plaintiff has no basis to quiet title without first discharging her

14   debt, and . . . she has not alleged that she has done so and is therefore the rightful owner of the

15   property.").  Accordingly, plaintiff's quiet title claim should be dismissed with leave to amend.[9]

16              3.  Intentional Infliction of Emotion Distress

17        Plaintiff alleges that defendants intentionally caused her stress by threatening her with

18   foreclosure when all payments are timely and current; by not applying those payments to the

19   principal;[10] by not being the authorized parties with any evidence recorded that they have rights

20   ───────────────────────

21        [8]  Exhibit 3 to the second amended complaint is a loan modification agreement.  It
     indicates that plaintiff executed a promissory note dated March 5, 2004.  ECF No. 75 at 56.  The

22   agreement also reflects that as of May 1, 2006, the unpaid principal balance on the note and
     security instrument was $180,725.10.  *Id.* at 57.  There is no indication from the second amended

23   complaint that plaintiff has tendered this amount in full.

24        [9]  The January 16, 2013, findings and recommendations, which were adopted in full,

25   recommended finding that plaintiff sufficiently pled a quite title claim.  However, plaintiff did not
     include with her first amended complaint a copy of the assignment of the deed of trust.

26   Therefore, the court was required to accept as true plaintiff's allegation that she did not owe
     anything to defendants.  *See* ECF No. 65 at 19.

27
          [10]  As discussed under plaintiff's quasi contract claim, plaintiff conceded at the hearing
28   that Litton and Ocwen applied the mortgage payments they collected to pay down plaintiff's loan.

                                                        20

1   regarding the property; by Ocwen continuously sending correspondences to the subject property,

2   despite plaintiff's requests not to; and by Ocwen threatening plaintiff's tenants, who in turn

3   complained to plaintiff.  ECF No. 75 ¶ 90.  According to plaintiff, she has systemic lupus

4   erythematosus and that any type of emotional distress can cause her major organs to shut down,

5   which can lead to death.  *Id.*

6       Defendants argue that plaintiff fails to state a claim because she has not adequately

7   alleged that defendants' actions were extreme or outrageous.  ECF No. 77 at 9.  Again, the court's

8   review of the complaint in this regard is not limited to plaintiff's factual conclusions, but rather

9   includes the specific underlying facts stated in the complaint and demonstrated by the exhibits

10  plaintiff attached to it.

11      "In order to establish a claim for intentional infliction of emotional distress under

12  California law, [plaintiff is] required to show (1) that the defendant's conduct was outrageous, (2)

13  that the defendant intended to cause or recklessly disregarded the probability of causing

14  emotional distress, and (3) that plaintiff's severe emotional suffering was (4) actually and

15  proximately caused by defendant's conduct."  *Austin v. Terhune*, 367 F.3d 1167, 1172 (9th Cir.

16  2004).  "Only conduct 'exceeding all bounds usually tolerated by a decent society, of a nature

17  which is especially calculated to cause, and does cause, mental distress' is actionable."  *Brooks v.*

18  *United States*, 29 F. Supp. 2d 613, 617-18 (N.D. Cal. 1998).

19      Here, the complaint and its exhibits do not show that defendants' conduct was extreme or

20  outrageous.  Long Beach assigned its beneficial interest under the Deed of Trust to Deutsche on

21  March 19, 2004.  ECF No. 75 at 81.  Plaintiff was in default on her property tax payments, and to

22  ensure that the property was not subjected to a tax lien, the loan servicer established an escrow

23  account and required plaintiff to pay an additional monthly amount to pay her taxes.  *Id*. at 10

24  (SAC ¶ 34).  Furthermore, the loan agreement for the 2004 refinancing permitted the creation of

25  an escrow account to cover property taxes.  *Id*. at 42-43.[11]  Sending notifications to plaintiff,

26  _____

27      [11]  While there are allegations scattered throughout the complaint challenging the validity
        of the refinancing document, plaintiff admitted at the February 5, 2014 hearing that she had a
        contract with Long Beach regarding the 2004 refinance of her loan.  Plaintiff explained her view
28      that defendants do not have an interest in the Deed of Trust because there was no valid

1   regardless of whether it was at her residence or the subject property, stating that she owed money

2   for the property taxes she failed to pay is not extreme or outrageous conduct.  Accordingly,

3   plaintiff's intentional infliction of emotional distress claim must be dismissed without leave to

4   amend.

5               4.  Negligent Misrepresentation

6           Plaintiff's second amended complaint also alleges a claim for negligent misrepresentation

7   against all defendants.  Plaintiff alleges that defendants, through counsel, misrepresented past and

8   existing facts to this court by presenting a copy of a fraudulent document that shows that the deed

9   of trust was assigned to Deutsche and recorded on March 19, 2004.  Plaintiff alleges that the

10  fraudulent document was not on file with the Sacramento County Recorder's Office.  ECF No. 75

11  ¶ 108.  She further alleges that all relevant documents reflect that Washington Mutual was the

12  only servicer of the loan.  She contends that it was not until this action was initiated that

13  defendant Deutsche recorded an interest in the property.  *Id.* ¶ 109.

14          Plaintiff also claims that defendants' actions were intended to induce plaintiff's reliance

15  because defendants recorded a Notice of Default and took steps towards confiscating plaintiff's

16  property.  *Id.* ¶ 110.  Plaintiff also alleges that she justifiably relied on defendants'

17  misrepresentations.  *Id.* ¶ 111.  Plaintiff contends that defendants' misrepresentations aggravated

18  her health.  *Id.* ¶ 112.

19          To state a cause of action for negligent misrepresentation, a plaintiff must establish: "(1)

20  the misrepresentation of a past or existing material fact, (2) without reasonable ground for

21  believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4)

22  justifiable reliance on the misrepresentation, and (5) resulting damages."  *Nat'l Union Fire Ins.*

23  *Co. of Pittsburgh, Pa. v. Cambridge Integrated Serv. Group, Inc.*, 171 Cal. App. 4th  35, 50 (1st

24  Dist. 2009).  Additionally, to state a claim for negligent misrepresentation, the plaintiff must also

25  show that the defendant owed the injured party a duty of care.  *Eddy v. Sharp*, 199 Cal. App. 3d

26  858, 864 (3rd Dist. 1988).

27  _____

28  assignment of the deed of trust.  However, the exhibits to plaintiff's second amended complaints
    plainly show otherwise.

1    As previously discussed, plaintiff's allegations regarding the validity of the assignment of

2   the Deed of Trust to Deutsche are not supported by statements plaintiff made at the February 5,

3   2014 hearing and the documents attached to the compliant.  Even without these contradictions,

4   plaintiff cannot maintain a claim for negligent misrepresentation against defendants because she

5   cannot demonstrate that defendants owed her a duty of care.  *See Nymark v. Heart Fed. S. & L.*

6   *Assn.*, 231 Cal. App. 3d 1089, 1096 (3rd Dist. 1991) ("[A]s a general rule, a financial institution

7   owes no duty of care to a borrower when the institution's involvement in the loan transaction

8   does not exceed the scope of its conventional role as a mere lender of money."); *Oaks Mgmt.*

9   *Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (4th Dist. 2006) ("Absent special

10  circumstances a loan transaction is at arms length and there is no fiduciary relationship between

11  the borrower and lender.").  Therefore, this claim fails and should be dismissed without leave to

12  amend.[12]

13  IV.    MOTION FOR SUMMARY JUDGMENT

14          Plaintiff has also filed a motion for summary judgment.  ECF No. 86.  Although she

15  concedes that this case "is still in the initial stage," plaintiff contends that summary judgment is

16  appropriate at this time because she filed this action more than a year ago.[13]  ECF No. 86-1.

17  Given that plaintiff's amended complaint once again contains several counts which fail to state a

18  claim, there is no basis for granting her summary judgment.

19          Moreover, if plaintiff is able to file a properly pleaded complaint that proceeds further, the

20  parties will have an opportunity to conduct discovery and file any appropriate dispositive motion.

21  At this time, there is no grounds upon which plaintiff can be granted summary judgment.

22  /////

23

24          [12]  Defendants argue that plaintiff's claim is actually a fraud claim.  ECF No. 77 at 12.  At
     the February 5 hearing, plaintiff unequivocally stated that she is asserting a negligent
25  misrepresentation claim, not a fraud claim.

26          [13]  Plaintiff's apparent frustration about the slow progression of her action takes little or no
27  account of the fact that she has now submitted her third complaint containing several purported
     causes of action that still fail to comply with the pleading requirements set forth in the Federal
28  Rules of Civil Procedure.

V.      MOTION FOR SANCTIONS

Plaintiff also requests that this court impose sanctions against defendants.  ECF No. 85.
Plaintiff contends that the imposition of sanctions is appropriate because defendants are
attempting to impede the judicial system by submitting fraudulent documents.  Plaintiff also takes
issue with defendants' moving to dismiss her various complaints.

Plaintiff's request for sanctions lacks merit.  Aside from plaintiff's conclusion that
defendants relied on a fraudulent document, plaintiff has failed to provide any evidence
establishing that any documents submitted in this case are fraudulent.  Furthermore, defendants'
motions to dismiss have had merit.  Accordingly, plaintiff's motion for sanctions is denied.

VI.     CONCLUSION

As provided herein, it is hereby ORDERED that:

1.  Plaintiff's motion for recusal, ECF No. 11, is denied; and

2.  Plaintiff's motion for sanctions, ECF No. 85, is denied.

Further, it is RECOMMENDED that:

1. Defendants' motion to dismiss plaintiff's second amended complaint, ECF No. 77, be
granted as follows:

a.  Plaintiff's RESPA claim be dismissed without prejudice and with leave to
amend.

b.  Plaintiff's no contract claim be dismissed with prejudice and without leave to
amend.

c.  Plaintiff's Internal Revenue Code claim be dismissed with prejudice and
without leave to amend.

d.  Plaintiff's quasi contract claim be dismissed with prejudice and without leave
to amend.

e.  Plaintiff's quite title claim be dismissed without prejudice and with leave to
amend.

f.  Plaintiff's intentional infliction of emotional distress claim be dismissed with
prejudice and without leave to amend.

g.  Plaintiff's negligent misrepresentation claim be dismissed with prejudice and without leave to amend.

2.  Plaintiff be granted thirty days from the date of service of any order adopting these findings and recommendations to file a third amended complaint as provided herein.  The third amended complaint must bear the docket number assigned to this case and must be labeled "Third Amended Complaint."  Leave to file an amended the complaint should be granted only to provide plaintiff an opportunity to cure the deficiencies identified herein, and not to assert new claims for relief.  Should plaintiff fail to timely file a third amended complaint in accordance with this order, this action proceed on plaintiff's second amended complaint as narrowed herein.

3.  Plaintiff's motion for summary judgment, ECF No. 86, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  March 12, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE