UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE' L. MARTIN,<br><br>Plaintiff,<br><br>v.<br><br>LITTON LOAN SERVICING LP, et al.,<br><br>Defendants. | No. 2:12-cv-970-MCE-EFB PS<br><br>FINDINGS AND RECOMMENDATIONS |

On October 8, 2014, this matter was before the court for hearing on defendants Litton Loan Servicing LP ("Litton"), Ocwen Loan Servicing LLC ("Ocwen"), Deutsche Bank National Company ("Deutsche Bank"), and Western Progressive LLC's ("Western") motion to dismiss plaintiff Renee' Martin's third amended complaint.[1] ECF No. 119. Attorney Joshua Mino appeared on behalf of defendants; plaintiff appeared pro se. For the following reasons, it is recommended that defendants' motion to dismiss be granted in part and denied in part.

I. PROCEDURAL HISTORY

The procedural background of this case was previously set forth in the Order and Findings and Recommendations filed on January 16, 2013 (ECF No. 65), a brief summary of which is provided below. In short, plaintiff initiated this lawsuit to prevent a foreclosure of a residence in

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

1

Elverta, California (the "subject property") that she acquired in 1996. ECF No. 1 at 6.[2] Her complaint purported to assert a variety of federal and state law claims. The crux of her claims is that she timely paid her mortgage payments until a dispute arose between her and the mortgage servicer over the payment of her delinquent property taxes. To protect its collateral, Litton paid plaintiff's delinquent property taxes and then increased her monthly mortgage payment to collect for the taxes. Plaintiff claims that this was done without her permission and notes that she refused to pay the higher amount. She attempted to make payments at the previous monthly amount and not include the additional amount for taxes, but those payments were not accepted. Ultimately, Litton determined that she was in default on the mortgage and initiated steps to proceed with a foreclose.

Plaintiff sought a temporary restraining order which was denied on April 13, 2012. ECF No. 7. Thereafter, defendants filed a motion to dismiss and plaintiff filed another motion for a temporary restraining order.[3] In the interim, plaintiff filed a motion to amend her complaint, which was granted (ECF Nos. 24, 25) thereby mooting the motion to dismiss the earlier complaint.

Plaintiff filed her first amended complaint and a motion for a preliminary injunction and the defendants moved to dismiss the amended complaint. At the hearing on the motion for a preliminary injunction, defendants' counsel represented that defendants would postpone "any foreclosure sale up until the motion [to dismiss] could be heard, or the settlement conference could be completed." ECF No. 60 at 11 of 13. Based on that representation, the court concluded that there was no imminent danger of irreparable harm and issued findings and a recommendation that the motion for a preliminary injunction be denied without prejudice. ECF No. 47. However, plaintiff sought reconsideration of that recommendation and included evidence that, notwithstanding the defendants' representation at the hearing, defendants had posted a Notice of Trustee's Sale setting an imminent sale date. The court heard arguments on December 12, 2012

---

[2] Page numbers cited herein refer to those assigned by the court's electronic docketing system and not those assigned by the parties.

[3] The second motion for a temporary restraining order was also denied. ECF Nos. 23, 37.

on plaintiff's request for reconsideration and the defendants' motion to dismiss the first amended complaint. After supplemental briefing, the count granted reconsideration and recommended that a preliminary injunction be granted (ECF No. 65 at 32, 34-35) and that the motion to dismiss be granted in part and denied in part. *Id*. at 34. That recommendation was adopted. ECF Nos. 72, 84.

Plaintiff subsequently filed a second amended complaint, a motion for sanctions, and a motion for summary judgment. ECF Nos. 75, 85, 86. Plaintiff also filed an affidavit "in support of bias and prejudice" citing to 28 U.S.C. § 144, which the court construed as a motion for recusal. ECF No. 11. Defendants moved to dismiss all claims in plaintiff's second amended complaint, except plaintiff's cause of action for violations of the Fair Debt Collection Practices Act. ECF No. 77. The court denied plaintiff's motion for sanctions, motion for recusal, and motion for summary judgment, and granted in part and denied in part defendants' motion to dismiss. ECF Nos. 100, 103.

Plaintiff has now filed a third amended complaint, which is the subject of the current motion to dismiss.

II.     MOTION TO DISMISS

    A.  Third Amended Complaint

Plaintiff's third amended complaint purports to assert the following federal and state law claims: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), (2) violation of the Real Estate Settlement and Procedures Act ("RESPA"), 12 U.S.C. § 2605, and (3) quiet title.

According to the third amended complaint, plaintiff refinanced her mortgage for the subject property on March 5, 2004. ECF No. 116 ¶ 24. The loan was modified on May 30, 2006 and plaintiff's payments increased to the amount of $1,143.00. ECF No. 116 ¶ 29. However, as already mentioned, a dispute arose over whether the Litton could require plaintiff to pay an additional $85.00 per month into an escrow account to cover the payment of her delinquent property taxes. *Id*. ¶¶ 39-42. Plaintiff continued to pay the amount of her agreed upon mortgage payment, but refused to include the additional amount to cover her property taxes. ECF No. 116 at 49. Therefore, defendants deemed her to be in default. *Id.* at ¶ 54.

The thrust of plaintiff's allegations is that the defendants are "strangers" to the deed of trust and the loan she took out to purchase the subject property; therefore, the defendants have no legal right to payment and she does not owe anything to the defendants. ECF No. 116 ¶ 81. She further contends that she was not properly notified of the transfer of servicing of her mortgage from Litton to Ocwen. *Id.* at ¶ 108. On that basis, she alleges that the transfer is void and Ocwen has no legal right to collect her mortgage payments. *Id*. Plaintiff also alleges that defendants Litton and Ocwen failed to provide the information requested in her Qualified Written Request as required by law. *Id*. at 37-38. She contends that she has been harassed by both Litton and Ocwen for payments they have no right to collect and that both defendants are damaging her credit by inaccurately reporting that she was delinquent in her mortgage payments. *Id*. at 30. Defendants move to dismiss, arguing that plaintiff has failed to alleged sufficient facts to support her claims for relief. ECF No. 119.

  B.  Rule 12(b)(6) Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe

the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). The Ninth Circuit has held that the less stringent standard for pro se parties is now higher in light of *Iqbal* and *Twombly*, but the court still continues to construe pro se filings liberally. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). Neither need the court accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

In deciding a Rule 12(b)(6) motion to dismiss, the court may consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1338, and matters of public record, including pleadings, orders, and other papers filed with the court, *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

C. <u>Plaintiff's Claims</u>

1. <u>Fair Debt Collection Practices Act</u>

Plaintiff's third amended complaint includes a claim that defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, by failing to give plaintiff an opportunity to rebut incorrect credit reports submitted to credit reporting agencies, and failing to take appropriate corrective action after being advised about the disputed information. ECF No.

5

116 at 30. Plaintiff further contends that defendants Litton and Ocwen violated the FDCPA by placing calls between the hours of 7:00 a.m. and 10:00 p.m. to demand payment. *Id*. at 31. Plaintiff alleges that Ocwen's representatives called every 15 minutes and attempted to hide their identity. *Id*. Defendants Ocwen and Litton also allegedly sent certified mail to the subject property, which was occupied by tenants, even though they had been notified not to send mail to that address. *Id*. at 32.

Defendants move to dismiss plaintiff's FDCPA, arguing that plaintiff has failed to allege that defendants are debt collectors as defined by the FDCPA. ECF No. 119 at 8. The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692(e). The FDCPA applies only to a "debt collector," defined as "a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another." 15 U.S.C. § 1692a(6). The FDCPA expressly excludes from this definition any person collecting or attempting to collect a debt originated by that person. 15 U.S.C. § 1692a(6)(F)(ii). Moreover, "FDCPA's definition of debt collector does not include the consumer's creditors, a mortgage serving company, or any assignee of the debt, so long as the debt was not in default at the time it was assigned." *Casault v. Federal Nat. Mortg. Ass'n*, 915 F. Supp. 2d 1113, 1126 (C.D. Cal. Nov. 26, 2012); see also *Costantini v. Wachovia Mortg. FSB*, 2009 WL 1810122, at *3 (E.D. Cal. June 24, 2009) ("The law is well-settled that creditors, mortgagors, and mortgage servicing companies are not debt collectors and are statutorily exempt from liability under the FDCPA.") (internal alterations omitted).

As to Western or Deutsche Bank, plaintiff does not allege that either attempted to collect any debt. All allegations are directed towards Litton and Ocwen. As to Litton, plaintiff specifically alleges that the loan servicing was transferred to Litton in July 2006 and payments were made timely for the next two years. ECF No. 116 ¶ 30. The loan service was subsequently

6

transferred to Ocwen on November 1, 2011. *Id.* ¶ 49.  Plaintiff alleges that she missed a payment in December 2010, but that her account was brought current in July 2010 and has remained current until present. *Id.* ¶ 51. Defendants contend that based on these allegations it is clear that the loan was current at the time it was transferred to Litton and Ocwen. ECF No. 119 at 9.

Plaintiff does allege that she was current on her payment when the servicing of the loan was transferred to Litton in 2006. ECF No. 116 ¶ 30. However, there are allegations in the third amended complaint indicating that she was in default at the time service was transferred to Ocwen. Plaintiff alleges that in September 2010, she received a letter stating that an escrow account had been established and that her loan payments were increased to $1,228.06 commencing on October 1, 2010. *Id.* ¶ 42. However, she further claims that she continued to make monthly payments in the amount of $1,143.00, the amount she believed she was obligated to pay. *Id.* ¶¶ 46-47. Her failure to pay the increased amount eventually resulted in plaintiff receiving a Notice of Default, stating that she owed $2,690.76. *Id.* ¶ 54. While the Notice of Default may not have been filed until December 15, 2011, after Ocwen began servicing the loan, it is clear that plaintiff was behind on her payments at the time of the November 2011 transfer from Litton to Ocwen.[4]

Thus, plaintiff has sufficiently alleged that Ocwen was a debt collector as that term is defined by the FDCPA. Therefore, defendants' motion to dismiss plaintiff's FDCPA claim against Ocwen must be denied. As to Litton, payments were timely at the time of assignment, and therefore Litton is not a debt collector as defined by the FDCPA. Accordingly, plaintiff's FDCPA claim against Litton must be dismissed. Further, as plaintiff does not allege that

---

[4] At the October 8 hearing, defendants argued that while plaintiff was behind on her payments at the time of the transfer to Ocwen, she was not in default. According to Ocwen's counsel, plaintiff was not in default until the notice of default was filed. The FDCPA does not define "in default;" therefore courts look to the underlying contract and applicable state law. *De Dios v. Int'l Realty & RC Invs.*, 641 F.3d 1071, 1074 (9th Cir. 2011). The California non-judicial foreclosure statutes do not provide an obvious definition of "in default." *Natividad v. Wells Fargo Bank, N.A.*, 2013 WL 2299601, at *4 (N.D. Cal. May 24, 2013). However, the note that secured plaintiff's loan clearly states, "[i]f [borrower] do[es] not pay the full amount of each monthly payment on the date it is due, [borrower] will be in default." ECF No. 75 at 37 (2nd Amnd. Compl. Ex. 1). Thus, contrary to Ocwen's contention, plaintiff was in default at the time servicing of the loan was transferred from Litton to Ocwen.

7

1 Deutsche Bank and Western engaged in any debt collection activity, to the extent plaintiff
2 intended to assert any FDCPA claim against these defendants, such a claim must be dismissed.

### 2. Real Estate Settlement and Procedures Act

Plaintiff also asserts a claim for violation of the Real Estate Settlement and Procedures Act ("RESPA") against Litton and Ocwen. ECF No. 116 at 36-39. She contends that Litton violated RESPA by not giving her 15 days' notice of a new servicer, and that Ocwen violated the act by charging her a late fee for sending her payment to Litton instead of Ocwen. *Id*. Plaintiff further contends that both Litton and Ocwen violated REPSA by failing by to respond to plaintiff's qualified written request ("QWR"). *Id*. at 37-38.

RESPA provides that when the servicer of a loan changes, the borrower is entitled to notice. 12 U.S.C. § 2605(b)(1), (c)(1); 12 C.F.R. § 1024.33(b). Specifically, the transferor must provide notice not less than 15 days after the date of effective transfer of the loan, 12 U.S.C. § 2605(b)(2)(A), and the transferee must provide notice not more than 15 days after the date of the effective transfer. 12 U.S.C. § 2605(c)(2)(A); 12 C.F.R. § 1024.33(b)(3)(i). RESPA also provides that, for a sixty day period beginning on the date of the effective transfer, if a borrower sends their payment to the transferor (instead of the transferee, where the payment should have been sent), the borrower will not be charged a late fee. 12 U.S.C. § 2605(d); 12 C.F.R. § 1024.33(c)(1). Further, if a mortgage loan servicer receives a QWR from a borrower, the servicer shall provide a written response acknowledging receipt within five days, 12 U.S.C. § 2605(e)(1); 12 C.F.R. § 1024.36(c), and respond to the inquiry not later than thirty days. 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d).

Plaintiff alleges that she received a notice dated October 4, 2011, stating that servicing for her loan was being transferred to Ocwen on November 1, 2011. ECF No. 116 ¶ 108. She claims, however, that she did not receive the letter until October 27, 2011, and that Litton backdated the letter. *Id.* Accepting these allegations as true, Litton's notice of transfer was sent just prior to

/////
/////
/////

1    October 27, 2011, less than 15 days before the November 1, 2011 transfer date.[5]  Accordingly,

2    plaintiff sufficiently alleges that Litton failed to comply with 12 U.S.C. § 2605(b)(2)(A).

3          Plaintiff also alleges that Ocwen assessed a late fee against plaintiff when plaintiff sent

4    her November 2011 payment to Litton, not Ocwen.  ECF No. 116 ¶ 113.  RESPA specifically

5    requires that where a borrower pays the transferor service within the first sixty days of the

6    effective date of transfer, the borrower will not be charged a late fee.  12 U.S.C. § 2605(d); 12

7    C.F.R. § 1024.33(c)(1).  Plaintiff further alleges that Ocwen and Litton violated RESPA by

8    completely failing to respond to a QWR sent to both defendants.  ECF No. 116 ¶ 110.  RESPA

9    requires a mortgage loan servicer to respond to the inquiry with the proper information not later

10   than thirty days after receipt of the QWR.  12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d).

11         Accordingly, plaintiff has sufficiently alleged claims against Litton and Ocwen for

12   violation of RESPA.  Defendants argue, however, that all of plaintiff's RESPA claims fail

13   because RESPA does not apply to the loan at issue in this case.  ECF No. 119 at 10-11.

14   Defendants contend that the plaintiff's intention when purchasing the subject property was to

15   eventually rent it to tenants, and therefore the primary purpose of the loan was for business.  *Id.*

16         "Congress enacted [RESPA] in 1974 to protect consumers from abusive practices in

17   mortgage closings."  *Johnson v. Wells Fargo Home Mortg., Inc.*, 635 F.3d 401, 417 (9th Cir.

18   2011).  The protections provided by RESPA, however, do "not apply to credit transactions

19   involving extensions of credit—(1) primarily for business, commercial, or agricultural purposes."

20   12 U.S.C. § 2606(a)(1); *see Johnson*, 635 F.3d at 417.  Extensions of credit to purchase, improve,

21   or maintain a non-owner-occupied rental are deemed to be for business purposes and are not

22   covered by RESPA.  *Johnson*, 635 F.3d at 417.

---

[5] At the October 8 hearing, Litton argued that notice is effective on the date of dispatch, not date of receipt, and that it properly mailed notice that servicing of the loan was transferring more than 15 days before the effective transfer date.  Litton's argument is more appropriate for a motion for summary judgment, where Litton can submit evidence demonstrating when it dispatched the notice of a new servicer.  For purposes of the pending motion to dismiss, the court must accept the allegations in the complaint as true.  As discussed above, plaintiff alleges that Litton backdated its notice letter.  Accepting this allegation as true, plaintiff has adequately alleged a violation of RESPA.

The determination as to whether a loan is for a personal or business purpose is decided on a case by case basis. *Thorn v. Sundance Properties*, 726 F.2d 1417, 1419 (9th Cir. 1984). "In evaluating whether a certain loan was primarily for business purposes under RESPA, courts apply the same standards as are used under [the Truth in Lending Act.]" *Galindo v. Financo Financial, Inc.*, 2008 WL 4452344, at *4 (N.D. Cal. Oct. 3, 2008). This analysis requires an examination of:

> [1] The relationship of the borrower's primary occupation to the acquisition. The more closely related the more likely it is to be business purpose.
>
> [2] The degree to which the borrower will personally manage the acquisition. The more personal involvement there is, the more likely it is to be business purpose.
>
> [3] The ratio of income from the acquisition to the total income of the borrower. The higher the ratio, the more likely it is to be business purpose.
>
> [4] The size of the transaction. The larger the transaction, the more likely it is to be business purpose.
>
> [5] The borrower's statement of purpose for the loan.

*Thorn*, 726 F.2d at 1419.

Here, plaintiff alleges that at the time she refinanced her loan, she was living at the subject property and did so for at least one year. She claims the refinance was for a residential loan and that on her application she stated that she would be occupying it as her primary residence because she had no other place to live. ECF No. 116 at 37. While plaintiff does not specifically allege that she did not purchase the subject property as an investment property, her allegations are sufficient at this juncture to show that she did not purchase the subject property as an investment property but instead to serve as her residence. Whether she will be able to produce sufficient evidence of that either on summary judgment or trial remains to be determined. But her allegations in the complaint are sufficient to state a claim. Accordingly, defendants' motion to dismiss plaintiff's RESPA claims must be denied.

### 3. Quiet Title

Plaintiff last claim is a state law claim to quiet title of the subject property. Specifically, she seeks a judicial declaration that the title to the subject property is vested in plaintiff alone and that the defendants have no interest, right, or title to the property. ECF No. 116 ¶ 80. She claims

1   that none of the defendants have any legal rights to payment and that she does not owe anything
2   to any of the defendants. *Id.* at 29. Defendants move to dismiss this claim, arguing that it fails
3   because plaintiff has not alleged valid and/or viable tender of the indebtedness. ECF No. 119 at
4   4.

5         The purpose of a quiet title action "is to settle and determine, as between the parties, all
6   conflicting claims to the property in controversy, and to decree to each such interest or estate
7   therein as he may be entitled to." *Peterson v. Gibbs*, 147 Cal. 1, 5 (Cal. 1905). To establish a
8   claim for quiet title, plaintiff must file a verified complaint that alleges: (a) a description of the
9   property; (b) plaintiff's title as to which determination is sought; (c) the adverse claims to the
10  title; (d) the date to which the determination is sought; and (e) a prayer for the determination of
11  title. Cal. Civ. Proc. Code § 761.020. "In order to satisfy the second requirement, [the] plaintiff
12  must allege that he has discharged his debt, regardless to whom it is owed." *Ananiev v. Aurora*
13  *Loan Svcs.*, 2012 WL 4099568, at *3 (N.D. Cal. Sep. 17, 2012). This requires a plaintiff to show
14  "that they are the rightful owners of the property, i.e.[,] that they have satisfied their obligations
15  under the Deed of Trust." *Kelly v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048,
16  1057 (N.D. Cal. 2009).

17        Plaintiff seeks to quiet title to the subject property under the contention that the defendants
18  have no interest in the property due to a defective assignment of the deed of trust. ECF No. 116
19  at 28-29. Plaintiff previously challenged defendants' interest in the subject property, but under a
20  somewhat different theory. In plaintiff's second amended complaint, she argued that defendants
21  had no interest in the deed of trust and note because there was no contract between her and
22  defendants. Plaintiff claimed that an assignment of the deed of trust from Long Beach Mortgage
23  Company to Deutsche Bank was fraudulent because it was filled out by hand and indicated that
24  plaintiff was the assigning party, which she denied. ECF No. 80 at 7. Plaintiff also claimed the
25  assignment was not valid because defendants did not record the assignment until August 6, 2012,
26  more than eight year after the assignment was executed.

27        In the March 12, 2014 findings and recommendations, the court explained that plaintiff's
28  challenge to defendants' interest in the deed of trust and note failed because, as previously

1  conceded, she had a contract with Long Beach Mortgage Company, the entity with which she
2  refinanced her loan in March 2004. ECF No. 100 at 14. Documents appended to the second
3  amended complaint also refuted plaintiff's allegations that defendants did not have a right to
4  receive her monthly mortgage payments. *Id*. Finally, the court explained that plaintiff's
5  contention that the assignment of the deed of trust was fraudulent for various reasons was based
6  on a misreading of the document and a misunderstanding of the applicable law. *Id*. As the record
7  demonstrated that defendants had an interest in the subject property, plaintiff was required to
8  allege that she tendered the full principle due under the loan to succeed on the quiet title claim.
9  *Id*. at 20. Because the second amended complaint failed to allege tender, plaintiff's quiet title
10  claim was dismissed with leave to amend.

11  Plaintiff, in her third amended complaint, again fails to allege that she tendered the
12  amount owed under the loan. Instead, she once again challenges defendants' interest in the
13  subject property, this time claiming that assignment was ineffective due to improper
14  securitization. She contends that when Long Beach Mortgage Company's assigned its interest in
15  the subject property to Deutsche Bank, as a trustee for Long Beach Mortgage Loan Trust 2004-3,
16  the assignment did not comply with the Pooling Service Agreement ("PSA") governing the loan
17  trust and therefore claims that the assignment was invalid. ECF No. 116 at 26. However,
18  plaintiff does not clearly allege how the PSA was violated by the assignment. She also claims
19  that assignment was invalid because Sue Southwick, a representative of Long Beach Mortgage,
20  and the notary's signatures on the assignment of the deed of trust were "electronic robo
21  signature." *Id.* at 22.[6]

22  Both arguments lack merit and do not cure her failure to allege tender. Courts have
23  consistently held that a plaintiff does not have standing to challenge the assignment of a deed of
24  trust based on an alleged failure to comply with a trust's PSA. *See Newman v. Bank of New York*
25  *Mellon*, 2013 WL 5603316, at *3 (E.D. Cal. Oct. 11, 2013) (holding that plaintiff could not state

---

[6] Although plaintiff was previously granted only leave to amend to cure deficiencies identified in the March 12, 2014 findings and recommendations, due to the pro se status of the plaintiff, the court will address the merits of the claims that the PSA was violated and the assignment was fraudulent due to the "electronic robo signatures."

a voidable claim for violations of a PSA and New York securities law); *Gilbert v. Chase Home Finance., LLC,* 2013 WL 2318890, at *3 (E.D. Cal. May 28, 2013) (holding that plaintiffs who are not parties to a PSA do not have standing to raise violations of a PSA or otherwise bring claims on the basis that a PSA was violated); *Hale v. World Sav. Bank*, 2012 WL 4675561, at *6 (E.D. Cal. Oct. 1, 2012) (holding that plaintiffs who are not a party or a third party beneficiary of a PSA do not have standing to challenge it); *Dinh v. Citibank, N.A.*, 2013 WL 80150, at *4-5 (C.D. Cal. Jan. 7, 2013) (holding that plaintiff lacked standing to assert claim that assignment of loan was untimely under the Trust's PSA). Further, courts have also generally held that plaintiffs lack standing to challenge the validity of robo-signatures. *See Javaheri v. JPMorgan Chase Bank, N.A.,* 2012 WL 3426278, at *6 (C.D. Cal. Aug. 13, 2012) (accepting allegations of robo-signing as true, but holding that plaintiffs lacked standing to challenge the agreement as they were not a party); *Maynard v. Wells Fargo Bank, N.A.,* 2013 WL 4883202, at *9 (S.D. Cal. Sept. 11, 2013) (holding that plaintiff lacked standing to challenge the alleged fraudulent assignment as they were not a party to the transaction).

Plaintiff has been notified of the requirements for asserting a claim for quiet title. ECF Nos. 100 at 19-20, 103. Notwithstanding this admonishment, plaintiff again fails to allege she tendered the amount due under the loan. Accordingly, plaintiff cannot maintain her claim for quiet title. *See Distor v. U.S. Bank, N.A.*, 2009 WL 3429700, at *6 (N.D. Cal. Oct. 22, 2009) ("plaintiff had no basis to quiet title without first discharging her debt, and . . . she has not alleged that she has done so and is therefore the rightful owner of the property."). As plaintiff has repeatedly failed to cure this defect, further amendment would be futile and therefore this claim should be dismissed without leave to amend. *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (While the court ordinarily would permit a pro se plaintiff to amend, leave to amend should not be granted where amendment would be futile).

/////
/////
/////
/////

### III. CONCLUSION

Accordingly, it is hereby RECOMMENDED that defendant's motion to dismiss plaintiff's third amended complaint, ECF No. 119, be granted in part and denied in part as follows:

 a. Plaintiff's FDCPA claim against defendants Deutsche Bank, Western, and Litton be dismissed without further leave to amend;

 b. Plaintiff's quiet title claim be dismissed without further leave to amend;

 c. Defendants' motion to dismiss plaintiff's FDCPA claim against Ocwen be denied; and

 d. Defendants' motion to dismiss plaintiff's RESPA claim be denied.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 17, 2015.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE