UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RENEE' L. MARTIN,

          Plaintiff,

     v.

LITTON LOAN SERVICING LP, et al.,

          Defendants.

No.  2:12-cv-970-MCE-EFB PS

ORDER AND FINDINGS AND
RECOMMENDATIONS

      This case is before the court on the remaining defendants' motion for summary judgment and motion to dissolve a preliminary injunction.  ECF Nos. 162, 163.[1]

      Plaintiff responded to the motion with a motion to modify the court's scheduling order (ECF No. 174) and an opposition in which she requests reconsideration of an earlier order dismissing her quiet title claim (ECF No. 177).  For the following reasons, plaintiff's motion to modify the scheduling order is denied.  Further, it is recommended that her request for reconsideration be denied and that defendants' motion for summary judgment be granted in part and denied in part. It is also recommended that defendants' motion to dissolve the preliminary injunction be granted.

/////

---

[1]   This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21).  *See* 28 U.S.C. § 636(b)(1).

1

1    I.    Background

2          Plaintiff initiated this lawsuit to prevent a foreclosure of a residence in Elverta, California

3    (the "subject property") that she acquired in 1996. ECF No. 1 at 6.[2] Her complaint purported to

4    assert a variety of federal and state law claims. The crux of her claims is that she timely paid her

5    mortgage payments until a dispute arose between her and the mortgage servicer over the payment

6    of her delinquent property taxes. To protect the beneficiary's secured interest in the subject

7    property, the loan servicer, Litton, paid plaintiff's delinquent property taxes and then increased

8    her monthly mortgage payment to collect for the taxes. Plaintiff claims that this was done

9    without her permission and notes that she refused to pay the higher amount. She attempted to

10   make payments at the previous monthly amount and not include the additional amount for taxes,

11   but those payments were not accepted. Ultimately, Litton determined that she was in default on

12   the mortgage and initiated steps to foreclose.

13         Plaintiff sought a temporary restraining order which was denied on April 13, 2012. ECF

14   No. 7. Thereafter, defendants filed a motion to dismiss, and plaintiff filed another motion for a

15   temporary restraining order.[3] In the interim, plaintiff filed a motion to amend her complaint,

16   which was granted (ECF Nos. 24, 25) thereby mooting the motion to dismiss the earlier

17   complaint. Plaintiff filed her first amended complaint and a motion for a preliminary injunction

18   and defendants moved to dismiss the amended complaint. At the hearing on the motion for a

19   preliminary injunction, defendants' counsel represented that defendants would postpone "any

20   foreclosure sale up until the motion [to dismiss] could be heard, or the settlement conference

21   could be completed." ECF No. 60 at 11. Based on that representation, the court concluded that

22   there was no imminent danger of irreparable harm and issued findings and a recommendation that

23   the motion for a preliminary injunction be denied without prejudice. ECF No. 47. However,

24   plaintiff sought reconsideration of that recommendation and provided evidence that,

25   notwithstanding defendants' representation at the hearing, defendants had posted a Notice of

26   _____

27       [2] Page numbers cited herein refer to those assigned by the court's electronic docketing
     system and not those assigned by the parties.

28       [3] The second motion for a temporary restraining order was also denied.

1  Trustee's Sale setting an imminent sale date.  After hearing and supplemental briefing, the court

2  granted reconsideration and recommended that a preliminary injunction be granted (ECF No. 65

3  at 32, 34-35) and that the motion to dismiss be granted in part and denied in part.  *Id*. at 34.  That

4  recommendation was adopted.  ECF Nos. 72, 84.

5        Plaintiff subsequently filed a second amended complaint, a motion for sanctions, and a

6  motion for summary judgment (ECF Nos. 75, 85, 86), and defendants moved to dismiss all claims

7  in plaintiff's second amended complaint, except plaintiff's cause of action for violations of the

8  Fair Debt Collection Practices Act.  ECF No. 77.  The court denied plaintiff's motion for

9  sanctions and motion for summary judgment, and granted in part and denied in part defendants'

10  motion to dismiss.  ECF Nos. 100, 103.

11        Thereafter, plaintiff filed her third amended complaint, which is the operative complaint.

12  The thrust of her allegations is that the defendants are "strangers" to the deed of trust and the loan

13  she took out to purchase the subject property; therefore, defendants have no legal right to

14  payment and she does not owe anything to defendants.  ECF No. 116 ¶ 81.  She further contends

15  that she was not properly notified of the transfer of the servicing of her mortgage from Litton to

16  Ocwen.  *Id*. at ¶ 108.  On that basis, she argues that the transfer is void and Ocwen has no legal

17  right to collect her mortgage payments.  *Id*.  Plaintiff also alleges that defendants Litton and

18  Ocwen failed to provide the information requested in her Qualified Written Request as required

19  by law.  *Id*. at 37-38.  She contends that she has been harassed by both Litton and Ocwen for

20  payments they have no right to collect and that both defendants are damaging her credit by

21  inaccurately reporting that she was delinquent in her mortgage payments.  *Id*. at 30.

22        Defendants moved to dismiss the third amended complaint.  ECF No. 119.  That motion

23  was granted in part and denied in part.  The court dismissed all claims without leave to amend

24  against defendant Deutsche Bank National Company and Western Progressive LLC, plaintiff's

25  Fair Debt Collection Practices Act claim against Litton, and her quiet title claim as to all

26  defendants.  ECF No. 134.  The court denied the motion as to plaintiff's Real Estate Settlement

27  and Procedures Act ("RESPA") claim against Litton and Ocwen and her Fair Debt Collection

28  Practices Act ("FDCPA") claim against Ocwen.  *Id*.

3

1      Defendants now move for summary judgment on plaintiff's RESPA and FDCPA claims

2  and to dissolve the injunction entered in this case.  ECF Nos. 162, 163.  As noted, plaintiff

3  opposes the motion and requests reconsideration of the dismissal of her quiet title claim.  ECF

4  No. 177.  She also moves to modify the court's scheduling order to allow her to disclose a new

5  expert witness.  ECF No. 174.

6  II.      Motion to Modify the Scheduling Order

7      Plaintiff requests to extend the deadline in the scheduling order for the disclosure of

8  expert witnesses to allow her to disclose a new expert that she did not previously disclose.  ECF

9  No. 174.  She has failed to demonstrate good cause for the modification and therefore her motion

10  is denied.  Furthermore, as discussed below, the proposed new expert is not offered for testimony

11  on topics relevant to plaintiff's remaining claims; i.e., a RESPA claim against Litton and Ocwen

12  and a FDCPA claim against Ocwen.  Thus, there is no prejudice to plaintiff in denying the

13  request.

14      The court issued a status (pretrial scheduling) order that provided, among other things,

15  that the parties shall make their initial expert disclosures on or before June 17, 2015, and rebuttal

16  disclosure by July 15, 2015.  ECF No. 145 at 5.  On July 6, 2016, defendants moved to strike

17  plaintiff's expert disclosures based on plaintiff's failure to timely provide expert reports for her

18  proposed experts as required by Rule 26(a)(2)(B).  ECF No. 148.  The motion indicated that

19  plaintiff provided defendants with notice of her intention to call Nanette Barto as an expert

20  witness, but failed to provide a written report for that expert witness.  *See* Fed. R. Civ. P.

21  26(a)(2)(B) (requiring that the disclosure of an expert witness "be accompanied by a written

22  report . . . if the witness is one retained or specially employed to provide expert testimony in the

23  case . . . .")

24      The court denied defendants' motion to strike and instead modified the scheduling order

25  to provide plaintiff two additional weeks to serve any expert reports.  ECF No. 159.  The court

26  also extended the date to complete discovery to October 21, 2015, and required all pretrial

27  motions, except discovery motions, to be completed by December 16, 2015.  *Id*.  On December

28  16, 2015, defendants filed an ex parte application to modify the scheduling order to extend the

4

1   date to file pretrial motions.  ECF No. 160.  That motion was granted and the date to hear pretrial

2   motions was extended to February 17, 2016.  ECF No. 161.

3        Defendants then timely filed their motion for summary judgment and motion to dissolve

4   the preliminary injunction entered in this case (ECF Nos. 162, 163), which were noticed for

5   hearing on February 10, 2016 (ECF Nos. 166, 167).[4]  In response, plaintiff filed a "Request and

6   Opposition," in which she argued that the motions were not noticed for hearing in compliance

7   with the court's local rules and that therefore the hearing should be vacated.  ECF No. 168.  That

8   motion was denied.  ECF No. 171.  However, because plaintiff had not filed an opposition to the

9   motions, the hearing was continued and plaintiff was directed to file an opposition, which she has

10  since submitted.  *Id.*; *see* ECF No. 177.

11       Plaintiff also filed the instant request to allow her to belatedly disclose a new expert.  ECF

12  No. 174.  She contends that a scheduling modification is somehow necessary due to the court

13  granting defendants' ex parte application to extend the date to file dispositive motions.  *Id.* at 2.

14  Specifically, plaintiff states that "[a]s a result of this Honorable Court granting an extension to

15  Defendants, Plaintiff must now be given an extension of time, in all fairness to provide

16  Defendants with an expert testimony/declaration to be included in Plaintiff's opposition to

17  summary judgment."  *Id.*  Plaintiff further states that had defendants not moved for summary

18  judgment "and allowed this case to move forward to a jury trial, this request would not have been

19  necessary."  *Id.*  She also contends that her "health was totally disabling" and that she was

20  "unable to care for herself" due to "acute flares of gout attacks."  *Id.* at 3.

21       A court's scheduling order "may be modified only for good cause and with the judge's

22  consent."  Fed. R. Civ. P. 16(b)(4).  The good cause inquiry focuses on the diligence of the party

23  seeking the modification.  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir.

24  /////

25

26      [4]  The motions were originally noticed for hearing before the assigned district judge,
    contrary to the court's local rules, *see* E.D. Cal. L.R. 302(c)(21) (referring to magistrate judges

27  matters where all plaintiffs or defendants are proceeding in propria persona), and therefore the
    hearing was vacated and defendants were ordered to re-notice the motions in compliance with the

28  court's Local Rules.  ECF No. 165.

1    1992).  Thus, the "court may modify the pretrial schedule if it cannot reasonably be met despite

2    the diligence of the party seeking the extension."  *Id.*

3    Here, plaintiff has not demonstrated good cause for amending the scheduling order.  First,

4    the mere fact that the court granted defendants' prior request to modify the scheduling order does

5    not provide a basis for granting plaintiff's request.  Defendants' application was supported by

6    good cause, justifying a modification to the scheduling order.  *See* ECF No. 160 (explaining that

7    in October 2015, defendants' counsel's wife gave birth to premature twins—with one child

8    having medical complications—requiring counsel to take time off from work to care for his

9    children and wife).

10   Second, plaintiff's conclusory claims of debilitating health problems and gout attacks do

11   not persuade the court that plaintiff was unable to disclose her expert witness within the time

12   prescribed by the court's scheduling order.  Plaintiff personally appeared before the court on

13   August 12, 2015, for the hearing on defendants' motion to strike.  ECF No. 158.  Plaintiff was

14   able to arrive on time for the hearing and did not appear to be in any distress.  Furthermore, at the

15   hearing the court notified plaintiff of its intentions to modify the scheduling order to give her an

16   additional two extra weeks (until August 26, 2015) to complete her initial expert disclosure.

17   Plaintiff did not indicate that two weeks would be insufficient, nor did she identify any medical

18   issues that would prevent her from completing her expert disclosures within this period.  More

19   significantly, it was not until she filed the instant motion—approximately six months after the

20   date for completing initial expert disclosures—that she alleged that health issues interfered with

21   her ability to make her expert disclosures.  Under these circumstances, plaintiff has failed to show

22   that her health issues precluded her from meeting the deadline.

23   More fundamentally, plaintiff has failed to demonstrate that the new expert she wants to

24   disclose will render testimony relevant to the claims remaining in this action.  Plaintiff's motion

25   is silent as to how the expert relates to her defense against defendants' motion for summary

26   judgment.  In opposition to defendants' motion she submitted the declaration of William J.

27   Paatalo, who apparently is the expert she wishes to disclose.  ECF No. 178.  Mr. Paatalo purports

28   to be an expert in foreclosure fraud, chain of title analysis, and mortgage securitization.  *Id.* at 2-

4. He intends to testify that the chain of title for the note and deed of trust is clouded due to missing parties and therefore the current beneficiary under the note and deed of trust is unknown. *Id*. at 6.

His expert opinion, however, is not relevant to the claims remaining in this action. The only claims pending are plaintiff's RESPA claim against Litton and Ocwen and her FDCPA claim against Ocwen. These claims do not concern the chain of title for the note and deed of trust. Instead, Mr. Paatalo's opinion appears to relate to plaintiff's quiet title claim, which was previously dismissed and, as discussed below, her request for reconsideration of that dismissal must be denied.

Accordingly, plaintiff has failed to show good cause to modify the scheduling order, and the motion is denied.

III.     Motion for Reconsideration

Plaintiff requests reconsideration of the order dismissing her quiet title claim (ECF No. 134).

Orders that adjudicate the rights and liabilities of fewer than all the parties may be revised at any time before the entry of a judgment. Fed. R. Civ. P. 54(b). "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J v. AC and S, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). Further, Local Rule 230(j) requires that a motion for reconsideration state "what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion," and "why the facts or circumstances were not shown at the time of the prior motion." E.D. Cal., Local Rule 230(j)(3)-(4).

Plaintiff's request for reconsideration consists presents nothing new. It consists largely of arguments that have already been considered and rejected by the court. She contends that defendants have no interest in the deed of trust and note because the deed of trust was "forged" and not signed by plaintiff. ECF No. 177 at 5. She further contends that more than eight years elapsed after the forged deed of trust was purportedly executed and that during this time no

7

1   documents referencing defendants was ever publically recorded.  *Id.*  She therefore contends that

2   defendants are strangers to the deed of trust and do not have any interest in the subject property.

3        These arguments were raised in opposing defendants' motion to dismiss the second

4   amended complaint.  Plaintiff alleged that defendants had no interest in the deed of trust and note

5   because there was no contract between her and defendants.  ECF No. 75 at 23.  She also argued

6   that an assignment of the deed of trust from Long Beach Mortgage Company to Deutsche Bank

7   was fraudulent because it was filled out by hand and indicated that plaintiff was the assigning

8   party, which she denied.  ECF No. 6-7.  Plaintiff also contended the assignment of the deed of

9   trust was not valid because defendants did not record the assignment until August 6, 2012, more

10  than eight year after the assignment was executed.  *Id.* at 7-9.

11       This court's March 12, 2014 findings and recommendations, which were adopted in full,

12  explained that plaintiff's challenges to defendants' interest in the deed of trust and note failed

13  because, as she previously conceded, she had a contract with Long Beach Mortgage Company,

14  the entity with which she refinanced her loan in March 2004.  ECF No. 100 at 14.  Documents

15  appended to the second amended complaint also refuted plaintiff's allegations that defendants did

16  not have a right to receive her monthly mortgage payments.  *Id.*  Finally, the court explained that

17  plaintiff's contention that the assignment of the deed of trust was fraudulent for various reasons

18  was based on a misreading of the document and a misunderstanding of the applicable law.  *Id.*

19  Thus, her request for reconsideration fails to demonstrate that these findings were erroneous or

20  that the prior decision was manifestly unjust.  Nor does plaintiff submit any new evidence that

21  would warrant reconsideration of these findings.

22       Plaintiff appears to contend, however, that reconsideration is warranted due to an

23  intervening change in controlling law, citing a recent California Supreme Court decision in

24  *Yvanova v. New Century Mortgage Corp.*, 62 Cal. 4th 919 (2016).  *See* ECF No. 181.  As

25  discussed below, *Yvanova* has no application here.

26       In her third amended complaint, plaintiff sought to quiet title to the subject property based

27  on her contention that the defendants have no interest in the property due to a defective

28  assignment of the deed of trust.  ECF No. 116 at 28-29.  She claimed that when Long Beach

1    Mortgage Company assigned its interest in the subject property to Deutsche Bank, as a trustee for

2    Long Beach Mortgage Loan Trust 2004-3, the assignment did not comply with the Pooling

3    Service Agreement ("PSA") governing the loan trust.  Therefore, she reasoned, the assignment

4    was invalid.  ECF No. 116 at 26.

5           The court rejected this argument, observing that "[c]ourts have consistently held that a

6    plaintiff does not have standing to challenge the assignment of a deed of trust based on an alleged

7    failure to comply with a trust's PSA."  ECF No. 131 at 12.  Plaintiff cites *Yvanova* as a basis for

8    reconsideration.  In *Yvanova*, the court held that "[a] borrower who has suffered a nonjudicial

9    foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void

10   assignment merely because he or she was in default on the loan and was not a party to the

11   challenged assignment."  *Yvanova*, 62 Cal. 4th at 924.  *Yvanova*, however, is inapposite to this

12   case, which seeks to preempt foreclosure proceedings.  In *Yvanova*, the California Supreme Court

13   explicitly limited its holding to post-foreclosure actions for wrongful foreclosure.  Indeed, the

14   court specifically stated, "We do not hold or suggest that a borrower may attempt to preempt a

15   threatened nonjudicial foreclosure by a suit questioning a foreclosing party's right to proceed."

16   *Id.* at 924.  Moreover, California Appellate Courts that have addressed the impact of *Yvanova*

17   have determined, in unpublished opinions, that *Yvanova* applies only to wrongful foreclosure

18   claims, and not to actions seeking to prevent foreclosure.  *See Saeed Keshtgar*, 2016 WL

19   4183750, at *1 (Cal. App. Aug. 8, 2016) ("*Yvanova* applies only to actions alleging wrongful

20   foreclosure, not actions to preempt foreclosure."); *Watland v. Ocwen Loan Servicing, Inc.*, 2016

21   WL 1469610, at *8 (Cal. App. Apr. 13, 2016) ("*Yvanova* applies only to a borrower who has

22   suffered a nonjudicial foreclosure *sale*, and it disavows any suggestion that a borrower may sue

23   the foreclosing party before the foreclosure sale on this grounds.").  Here, plaintiff's suit seeks to

24   avoid foreclosure, and does not seek damages for an alleged wrongful foreclosure.  Accordingly,

25   *Yvanova* does not provide a basis for disturbing the court's order dismissing plaintiff's quiet title

26   claim.

27          Accordingly, plaintiff's motion for reconsideration must be denied.

28   /////

1    IV.    Motion for Summary Judgment

2           A.    Summary Judgment Standard

3           Summary judgment is appropriate when there is "no genuine dispute as to any material

4    fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

5    judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

6    to the determination of the issues in the case, or in which there is insufficient evidence for a jury

7    to determine those facts in favor of the nonmovant.  *Crawford–El v. Britton*, 523 U.S. 574, 600

8    (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v.*

9    *U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994).  At bottom, a summary judgment

10   motion asks whether the evidence presents a sufficient disagreement to require submission to a

11   jury.

12          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

13   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Thus, the rule functions to

14   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

15   trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

16   (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

17   under summary judgment practice, the moving party bears the initial responsibility of presenting

18   the basis for its motion and identifying those portions of the record, together with affidavits, if

19   any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

20   U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

21   party meets its burden with a properly supported motion, the burden then shifts to the opposing

22   party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

23   *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

24          A clear focus on where the burden of proof lies as to the factual issue in question is crucial

25   to summary judgment procedures.  Depending on which party bears that burden, the party seeking

26   summary judgment does not necessarily need to submit any evidence of its own.  When the

27   opposing party would have the burden of proof on a dispositive issue at trial, the moving party

28   need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

10

1   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

2   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U .S. at

3   323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

4   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

5   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

6   should be entered, after adequate time for discovery and upon motion, against a party who fails to

7   make a showing sufficient to establish the existence of an element essential to that party's case,

8   and on which that party will bear the burden of proof at trial.  *See id*. at 322.  In such a

9   circumstance, summary judgment must be granted, "so long as whatever is before the district

10  court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id*. at 323.

11          To defeat summary judgment the opposing party must establish a genuine dispute as to a

12  material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s) that

13  is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at

14  248 ("Only disputes over facts that might affect the outcome of the suit under the governing law

15  will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is

16  determined by the substantive law applicable for the claim in question.  *Id*.  If the opposing party

17  is unable to produce evidence sufficient to establish a required element of its claim that party fails

18  in opposing summary judgment.  "[A] complete failure of proof concerning an essential element

19  of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S.

20  at 322.

21          Second, the dispute must be genuine.  In determining whether a factual dispute is genuine

22  the court must again focus on which party bears the burden of proof on the factual issue in

23  question.  Where the party opposing summary judgment would bear the burden of proof at trial on

24  the factual issue in dispute, that party must produce evidence sufficient to support its factual

25  claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.

26  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Rather, the opposing party must, by affidavit

27  or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue

28  for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to

1    demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such

2    that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*,

3    477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

4         The court does not determine witness credibility.  It believes the opposing party's

5    evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255;

6    *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the

7    proponent must adduce evidence of a factual predicate from which to draw inferences.  *American*

8    *Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

9    dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at

10   issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

11   Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier

12   of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475

13   U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any

14   reasonable inferences that might be drawn from it could not support a judgment in favor of the

15   opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any

16   genuine dispute over an issue that is determinative of the outcome of the case.

17        B.    Analysis

18        Defendants move for summary judgment on the two claims remaining in this action for

19   violations of the FDCPA and RESPA.

20             1.    Fair Debt Collection Practices Act

21        Plaintiff's FDCPA claim proceeds only against Ocwen.  *See* ECF Nos. 131, 134.  The

22   operative complaint alleges that Ocwen violated the FDCPA by failing to give plaintiff an

23   opportunity to rebut incorrect credit reports submitted to credit reporting agencies; failing to take

24   appropriate corrective action after being advised about the disputed information; placing calls

25   between the hours of 7:00 a.m. and 10:00 p.m. to demand payment; and by its representatives

26   attempting to hide their identity during the phone calls.  *Id.* at ECF No. 116 at 30-32.  Plaintiff

27   also appears to contend that Ocwen violated the FDCPA by mailing documents to the subject

28   /////

1    property, which was occupied by tenants, even though it had been notified not to send mail to that

2    address.  *Id*. at 32.

3                          a.       Correct credit reports/failing to take corrective action

4           Ocwen argues that plaintiff's first contention—that Ocwen did not provide her with an

5    opportunity to rebut incorrect credit reports or take action after being advised about disputed

6    information—does not entitle plaintiff to relief because the FDCPA does not govern such

7    conduct.  ECF No. 163-1 at 8.  To succeed on a claim for violation of the FDCPA, the plaintiff

8    must establish (1) she is a consumer, (2) that the debt arises out of a transaction entered into for

9    personal purposes, (3) that defendant is a debt collector, and (4) that the defendant violated one of

10   the provisions of the FDCPA.  *Holmes v. Electronic Document Processing, Inc*., 966 F. Supp. 2d

11   925, 931 (N.D. Cal. 2013).

12          The FDCPA does not contain any provision requiring a debt collector to provide a debtor

13   with an opportunity to correct false information submitted to a credit reporting agency, or take

14   any corrective action when faced with such a situation.  *See* 15 U.S.C. §§ 1692, *et seq*.  Indeed,

15   the FDCPA regulates "abusive debt collection practices," not credit reporting.  15 U.S.C.

16   § 1692a(5).  Thus, plaintiff's FDCPA claim based on her credit reporting allegations fail as a

17   matter of law.

18                          b.       Harassing phone calls

19          Plaintiff also claims that Ocwen violated section 1692d(5) of the FDCPA by calling her

20   throughout the day.  ECF No. 116 at 30.

21          Section 1692d of the FDCPA prohibits debt collectors from engaging "in any conduct the

22   natural consequence of which is to harass, oppress, or abuse any person in connection with the

23   collection of a debt."  15 U.S.C. § 1692d.  Included among the conduct prohibited by § 1692d is

24   "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or

25   continuously with intent to annoy, abuse, or harass any person at the called number."  15 U.S.C.

26   § 1692d(5).

27          "Whether there is actionable harassment or annoyance turns not only on the volume of

28   calls made, but also on the pattern of calls."  *Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d

1218, 1227 (E.D. Cal. 2010) (quoting *Joseph v. J.J. Mac Intyre Cos., LLC*, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002)); *see also Stirling v. Genpact Services, LLC*, 2012 WL 952310, at*4 (C.D. Cal. Mar. 19 2012) ("Numerous courts throughout the nation have held that the intent to annoy, abuse, or harass may be inferred from the nature, pattern, and frequency of debt collection calls."). Of significance here, courts have found that calling a debtor several times in a short period of time can constitute harassment under the FDCPA. *See, e.g. Akalwadi v. Risk Management Alternative, Inc.*, 336 F. Supp. 2d 492 (D. Md. 2004) (finding a genuine issue of material fact regarding whether calling plaintiff daily and on one occasion calling plaintiff three times in a five-hour period constituted harassment); *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1453 (D. Nev. 1994) (six calls in a 24 minutes sufficient to establish harassment on summary judgment); *United States v. Central Adjustment Bureau, Inc.*, 667 F. Supp. 370, 376 (N.D. Cal. 1986) (finding harassment where debt collector made as many as four or five telephone calls in a day to the same debtor).

In her verified complaint,[5] plaintiff claims that Ocwen often started calling her before 7:00 a.m. and that it would continue to call her throughout the day until 10:00 p.m. ECF No. 116 at 31. She further states that Ocwen would often call her every 15 minutes. *Id*. at 32. Plaintiff also submits a letter that she sent Ocwen requesting that it cease calling her. ECF No. 177 at 13-17. The letter states that "Ocwen harasses me daily by calling me several times a day with annoying phone calls; which is violation [sic] of federal law and constitutes 'harassment'. . . . If my phone is unanswered, Ocwen (based on caller ID) will not leave a message and hang up the phone. Twenty minutes later the harassment starts all over again throughout the day . . . ." ECF No. 177 at 13. The letter further indicates that on the December 15, 2011, Ocwen called her four times in approximately 30 minutes. *Id*. at 14. If a jury credits plaintiffs' testimony, it could reasonably conclude that Ocwen was frequently calling plaintiff with the intent to annoy or harass in violation of § 1692d(5).

---

[5] The allegations of a verified complaint may serve as an affidavit for purposes of summary judgment if they are based on personal knowledge and set forth the requisite facts with specificity. *See Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010).

1    Defendant contends, however, that the volume of calls were due to a "difficulty in

2    reaching the Plaintiff to explore loss mitigation alternatives (e.g. Loan Modification, Deed in

3    Lieu, Short Sale), rather than any intent to harass or collect upon the debt).  ECF No. 163-2 ¶ 43.

4    Plaintiff's version of the calls contradicts defendant's contention and, if she is believed, Ocwen

5    was calling plaintiff to collect a debt.  ECF No. 116 at 31, ¶ 88 (Ocwen would call plaintiff

6    throughout the day, "demanding payment.").

7    Viewing the evidence in the light most favorable to the plaintiff, there is a genuine dispute

8    of material fact as to whether Ocwen's calls to plaintiff violated 15 U.S.C. 1692d(5).

9    Accordingly, Ocwen's motion must be denied as to plaintiff's section 1692d(5) claim.

10                           c.      Failure to identify

11    Plaintiff also claims that Ocwen violated the FDCPA based on its representatives failing

12    to disclose their identity during telephone calls.  15 U.S.C. § 1692d(6) prohibits "the placement of

13    telephone calls without meaningful disclosure of the caller's identify."

14    Ocwen argues that it is entitled to summary judgment on this claim because it maintains a

15    policy that requires employees placing calls to first identify their name and disclose that they are

16    calling from Ocwen.  ECF No. 163-1 at 12; ECF No. 162-2 ¶ 45.  Ocwen contends that in the

17    event an employee deviated from this policy, it would not be liable for such conduct pursuant to

18    15 U.S.C. § 1692k(c).

19    "Although the FDCPA is a strict liability statute, it excepts from liability those debt

20    collectors who satisfy the 'narrow' bona fide error defense" set forth in 15 U.S.C. § 1962k(c).

21    *McCollough v. Johnson, Rodenburg, & Lauinger, LLC*, 637 F.3d 393, 948 (9th Cir. 2011).  That

22    section provides that"

23           A debt collector may not be held liable in any action brought under
24           [the FDCPA] if the debt collector shows by a preponderance of the
             evidence that the violation was not intentional and resulted from a
             bona fide error notwithstanding the maintenance of procedures
25           reasonable adapted to avoid such errors.

26    15 U.S.C. § 1962k(c).

27    To establish this affirmative defense, the defendant is required to "prove that (1) it

28    violated the FDCPA unintentionally; (2) the violation resulted from a bona fide error; and (3) it

15

1    maintained procedures reasonably adapted to avoid the violation." *Id*.  The defense applies to

2    "procedures reasonably designed . . . to avoid errors like clerical or factual mistakes."  *Jerman v.*

3    *Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 587 (2010).

4         Whether the bona fide error defense shields Ocwen from liability here cannot be resolved

5    on summary judgment.  Plaintiff's description of the calls, if believed, would show that the failure

6    to provide a meaningful disclosure of the caller's name was not unintentional.  In her verified

7    complaint, plaintiff states not only that Ocwen's representatives would fail to identify themselves,

8    but that they would "try to hide their identity, such as  . . . pretend[ing] like they were calling for a

9    long lost friend and were deceitful."  If a fact finder were to credit plaintiff's testimony in that

10   regard, it could reasonably find that the failure to disclose was not the result of a bona fide error.

11   Construing the evidence in the light most favorable to plaintiff, the failure by Ocwen's

12   representatives to disclose their identity was not unintentional and therefore the bona fide error

13   defense does not shield Ocwen form liability on summary judgment.  Accordingly, the motion for

14   summary judgment must also be denied as to this claim.

15                    d.    Mail Sent to Subject Property

16        Plaintiff also alleges that Ocwen violated the FDCPA by sending mail to the subject

17   property after she requested that no further mail be sent to that address.  Although plaintiff does

18   not identify the precise provision of the FDCPA that such conduct violated, presumably it is

19   plaintiff's position that the mail was sent to the subject property to harass her in violation of

20   § 1692d.

21        Ocwen argues that it is entitled to summary judgment on this claim because the

22   documents it mailed were not related to the collection of a debt.  Ocwen began serving the loan

23   on November 1, 2011.  Declaration of Gina Feezer ISO Defs.' Mot. Summ. J. (ECF No. 163-2)

24   ¶ 18,[6] Ex. 7 (ECF No. 163-3 at 35-39).  On November 4, 2011, Ocwen mailed plaintiff a debt

25

26        _____

27            [6]  Plaintiff requests the court strike Ms. Freezer's declaration, arguing that it contains false
     statements.  The request is denied.  Plaintiff's disagreement with Ms. Freezer's statements does
28   not provide a basis for striking her declaration.

validation letter pursuant to 15 U.S.C. § 1692g.[7]  ECF No. 163-3 at 49-51 (Ex. 11).  That letter, however, was sent to an address in Fairfield, California and not the subject property.  *Id.*  Later that month, Ocwen mailed plaintiff a letter regarding alternatives to foreclosure, as well as a Request for Mortgage Assistance to evaluate whether a loan modification or other loss mitigation alternatives were possible.  *Id.* at 52-61 (Exs. 12, 13).  However, these letters were also sent to the Fairfield address.  *Id.*

On December 15, 2011, Ocwen mailed to the subject property a Notice of Default.  *Id.* at 62-67 (Ex. 14).  On December 22, 2011, Ocwen received a letter from plaintiff, in which plaintiff requested that Ocwen cease all communications with plaintiff.  *Id.* at 68-72 (Ex. 15).  Curiously, in the same letter plaintiff also requested that Ocwen verify the debt.  *Id.*  Ocwen construed plaintiff's request for a debt validation as a Qualified Written Request ("QWR"), and provided a response on January 17, 2012.  *Id.* at 73-75 (Ex. 16).  Both the Notice of Default and the response to plaintiff's QWR were mailed to a P.O. Box located in American Canyon, California.  *Id.* at 62, 73.

Ocwen's evidence indicates that the letters and documents, with the exception of the Notice of Default, were sent to plaintiff at addresses other than the subject property.  Thus, the evidence before the court does not demonstrates that Ocwen mailed letters to the subject property for the purposes of harassing plaintiff and the property's tenants.  Furthermore, had defendant sent extra copies of the documents discussed above to the subject property, there still would be no violation of the FDCPA.

The documents Ocwen mailed consisted of a debt validation notice, loan modification/loss mitigation correspondence, a response to plaintiff's QWR, and documents related to the foreclosure of the property (i.e. Notice of Default).  Ocwen was required to send plaintiff the debt validation notice and the response to her QWR.  Thus, these documents cannot demonstrate harassment or any intent to harass in violation of § 1692d.  Further, the documents sent to plaintiff presenting alternatives to foreclosure do not constitute debt collection efforts for

---

[7]  That section requires a debt collector to provide a debtor with certain information, including the procedures for disputing the validity of the debt.  *See* 15 U.S.C. § 1692g(a).

1    purposes of the FDCPA.  *See Santoro v. CTC Foreclosure Service*, 12 F. App'x 476, 480 (9th

2    Cir. 2001) ("A letter suggesting loan workout options is not seeking to collect a debt.") (citing

3    *Bailey v. Security National Servicing Corp.*, 154 F.3d 384, 389 (7th Cir. 1998).  The remaining

4    document, the Notice of Default, was statutorily required to initiate the foreclosure proceedings

5    and did not seek to collect a debt.  Cal. Civ. Code § 2924; *Crane v. Bank of New York Mellon*,

6    2012 WL 1799244, at * 4 (E.D. Cal. May 16, 2012) ("Plaintiff's claims are based on foreclosure-

7    related conduct.  Foreclosing on a property pursuant to a deed of trust is not debt collection within

8    the meaning under the FDCPA."); *see also Santoro*, 12 F. App'x At 480 (finding that the

9    foreclosure sale "did not seek to collect the debt, the conduct forbidden under the [FDCPA].").

10           Accordingly, Ocwen is entitled to summary judgment on plaintiff's claim that it violated

11   the FDCPA by mailing documents to the subject property.

12                    2.    Real Estate Settlement and Procedures Act

13           Plaintiff asserts a RESPA claim against Litton and Ocwen.  ECF No. 116 at 36-39.  She

14   contends that Litton violated RESPA by not giving her 15 days' notice of a new servicer, and that

15   Ocwen violated the act by charging her a late fee for sending her payment to Litton instead of

16   Ocwen.  *Id*.  Plaintiff further contends that both Litton and Ocwen violated RESPA by failing by

17   to respond to her qualified written request ("QWR").  *Id*. at 37-38.

18           Defendants argue, among other things, that plaintiff's  RESPA claims fails because she

19   has not established that she suffered any damage that resulted in a pecuniary loss.  ECF No. 163-

20   1.[8]  To succeed on a claim for violation of RESPA, the plaintiff must establish that she sustained

21   actual damages.[9]  12 U.S.C. 1206(f); *see Molina v. Wash. Mutual Bank*, 2012 WL 431439, at *7

22   (S.D. Cal. Jan. 29, 2010 (failure to plead pecuniary damages defeats RESPA claim).  This

23   "requirement has the effect of limiting the cause of action to circumstances in which plaintiff can

24   _____

25           [8]  Because defendants are entitled to summary judgment based on plaintiff's failure to
     establish actual damages, the court does not address defendants' additional arguments.

26
27           [9]  In addition to actual damages, a plaintiff may recover "any additional damages, as the
     court may allow, in the case of a pattern or practice of noncompliance with the requirements of
28   [12 U.S.C. § 2605], in an amount not to exceed $1,000.  Plaintiff does not submit any evidence
     demonstrating that defendants conduct was part of a pattern or practice of noncompliance.

                                                     18

show that a failure to respond or give notice has caused him actual harm." *Shepherd v. Am. Home Mortg. Servs., Inc.*, 2009 WL 4505925, at *3 (E.D. Cal. Nov. 20, 2009).

The only damages that plaintiff purportedly sustained as a result of a violation of RESPA was a late fee that was allegedly imposed by Ocwen. ECF No. 116 at 38. RESPA provides that, for a sixty day period beginning on the date of the effective transfer of service, if a borrower sends her payment to the transferor (instead of the transferee, where the payment should have been sent), the borrower will not be charged a late fee. 12 U.S.C. § 2605(d); 12 C.F.R. § 1024.33(c)(1). Plaintiff contends that Ocwen violated RESPA by charging her a late fee for sending her payment to Litton instead of Ocwen. ECF No. 116 at 36-39. But plaintiff presents no evidence of this.

In her opposition, plaintiff states that that "Ocwen did in fact charge plaintiff a late fee." ECF No. 177 at 10. In support of this position, she cites to Exhibits 3 and 4 of her opposition. *Id*. However, the exhibits appended to the opposition are not in numerical order[10] and there is no documents identified as exhibits 3 and 4. Nevertheless, the court has reviewed the documents appended to plaintiff's opposition and none of them demonstrate that plaintiff was assessed a late fee. *See generally* ECF No. 177 at 13-75. In fact, other documents plaintiff untimely submitted in support of her opposition show that Ocwen did not assess plaintiff any late fees.[11] Plaintiff submitted four undated letters that Ocwen sent her. ECF No. 184 8-14. Each letter contains boiler stating, "A late charge has been assessed on your account . . . ." Just below this boiler is a table providing an itemization of the current amount due under the loan. *Id*. In each letter the table reflects that the current late charges are $0.00. *Id*. Plaintiff also submitted a Notice of Default she received from Ocwen. *Id*. at 15-16. That document reflects that as of January 18, 2012, plaintiff did not owe any late fees. *Id*. at 15.

/////

---

[10]  The first exhibit appended to the opposition is labeled "EXH 8" and the second exhibit is labeled "Exhibit 5."

[11]  Curiously, defendants move to strike the untimely submitted documents, arguing that plaintiff failed to produce these documents during discovery. ECF No. 185. As consideration of the documents will not prejudice defendants, the motion to strike is denied.

1      Thus, not only does plaintiff's evidence fail to demonstrate Ocwen charged her late fee in

2  violation of 12 U.S.C. § 2605(d), her own evidence actually indicates that no late fee was ever

3  assessed.  Thus, plaintiff cannot overcome summary judgment that she did not sustain any actual

4  damages due to a violation of RESPA and defendants are entitled to summary judgment on

5  plaintiff's RESPA claims.

6  V.      Motion to Dissolve Preliminary Injunction

7      Defendants also move to dissolve the preliminary injunction previously entered in this

8  case and release the related bond posted by plaintiff.  ECF No. 162.  Defendants argue that the

9  preliminary injunction should be dissolved because the remaining claims do not warrant the

10  injunction preventing the sale of the subject property.  *Id*. at 3-5.  The court agrees.

11      In October 2012, plaintiff filed a motion for a preliminary injunction, arguing that

12  defendants "commenced an unlawful foreclosure against [the] subject property and none of the

13  defendants have any lawful rights to foreclose on Plaintiff."  ECF No. 28 at 2.  That motion was

14  initially denied based on defendants' counsel's representation that defendants would postpone

15  "any foreclosure sale up until [a then pending motion to dismiss] could be heard, or [a] settlement

16  conference could be completed."  ECF No. 60 at 11.  Based on that representation, the court

17  found that plaintiff had failed to demonstrate immediate irreparable harm and her motion for

18  injunctive relief was denied.  ECF Nos. 47, 48.  However, plaintiff sought reconsideration of that

19  recommendation and provided evidence that, notwithstanding defendants' representation at the

20  hearing, defendants had posted a Notice of Trustee's Sale setting an imminent sale date.  After

21  hearing and supplemental briefing, the court granted reconsideration and recommended that a

22  preliminary injunction be granted.  ECF No. 65 at 32, 34-35.  That recommendation was adopted.

23  ECF No. 72.  Pursuant to Rule 65(c), plaintiff was ordered to post a security in the amount of

24  $1,143 per month, which was the pre-escrow account monthly mortgage payment.  ECF No. 72.

25      At the time the injunction was issued, plaintiff was proceeding on her first amended

26  complaint, which alleged a quiet titled claim alleging that defendants were strangers to the deed

27  of trust and note and therefore had no interest in the subject property.  ECF No. 65 at 19-20.

28  /////

1  However, plaintiff subsequently filed a second amended complaint which indicated that

2  defendants had obtained an interest in the subject property through an assignment of the

3  promissory note and deed of trust.  *See* ECF No. 100 at 20 n.9.  Eventually, plaintiff's quiet title

4  claim and all other claims challenging defendants' interest in the property were dismissed without

5  leave to amend, with only claims for violation of the FDCPA and RESPA remaining.  ECF Nos.

6  103, 131.

7          As explained above, the remaining defendants are entitled to summary judgment on

8  plaintiff's RESPA claim.  In any event, RESPA only permits an aggrieved party to recover

9  damages and does not provide for injunctive relief.  *Tamburri v. Suntrust Mortg., Inc.*, 875 F.

10  Supp. 1009, 1013 (N.D. Cal. 2012).  The only viable claim is plaintiff's FDCPA claim against

11  Ocwen for placing harassing phone calls in violation of 15 U.S.C. § 1692d(5) and (6).  However,

12  even if plaintiff succeeds on her FDCPA claim, she is not entitled to injunctive relief.  *See*

13  *Varnado v. Midland Funding LLC*, 43 F. Supp. 985, 993 (N.D. Cal. 2014) ("Injunctive and

14  declaratory relief are not available to litigants acting in an individual capacity under the

15  FDCPA.").

16          In short, plaintiff no longer has any claims challenging defendants' authority to foreclose

17  on the subject property which could entitle her to injunctive relief.  Thus, there is no basis for

18  keeping the preliminary injunction in place.  Accordingly, defendants' motion to dissolve the

19  preliminary injunction must be granted.

20          Defendants also request exoneration of the bond and release of the funds to defendants.

21  ECF No. 162-1 at 5-7.  As noted above, the bond consists of monthly payments plaintiff made to

22  the court in the amount of the undisputed portion of her monthly mortgage payment.  ECF No.

23  162-1 at 6.  Defendants explain that since the issuance of injunction, plaintiff has not paid her

24  mortgage payment, property taxes, or her homeowner's insurance on the subject property, and

25  that these costs have been advanced by defendants.  ECF No. 162-1 at 6.  They therefore argue

26  that that the entire bond should be released to them.

27          "Before a court may execute a bond, it must find the enjoined or restrained party was

28  'wrongfully enjoined or restrained.'"  *Nintendo Am., Inc. v. Lewis Galoob Toys, Inc.*, 16 F.3d

1032, 1036 (9th Cir. 1994).  "[T]here is a rebuttable presumption that a wrongfully enjoined party is entitled to have the bond executed and recover provable damages up to the amount of the bond."  *Id*.  However, the enjoined "party may not demand damages on the bond simply because the injunction was improperly granted.  He must demonstrate injury as a consequence of the injunction."  *Matek*, 862 F.2d at 733.  "[T]his standard provides an equitable means by which courts can decline to impose damages on the rare party who has lost a case on the merits but nevertheless should not suffer the execution of the preliminary injunction."  *Nintendo*, 16 F.3d at 1037.

Here, plaintiff's claims challenging defendant's interest in the property and authority to foreclose were without merit and have been dismissed without leave to amend.  Accordingly, defendants were wrongfully enjoined from foreclosing the subject property.  Furthermore, the bond posted by plaintiff only included the undisputed amount of plaintiff's mortgage payment, which defendants were entitled to receive.  Further, plaintiff does not dispute that she has since not made any mortgage payment to defendants, nor paid her property taxes or insurance payments on the subject property.  *See* ECF No. 177 at 10-11.  Accordingly, defendants are entitled to the entire bond, which will cover some, but not all of defendants' damages.  Accordingly, defendants' request that the bond be released to them should also be granted.

VI.   Conclusion

Accordingly, it is hereby ORDERED that:

1.  Plaintiff's motion to modify the scheduling order (ECF No. 174) is denied; and

2.  Defendants' motion to strike (ECF No. 185) is denied.

Further, it is RECOMMENDED that:

1.  Defendants motion for summary judgment (ECF No. 163) be granted in part and denied in part as follows:

a.  Summary judgment be denied as to plaintiff's FDCPA claim against Ocwen for violation of 15 U.S.C. § 1692d(5) and (6).;

b.  The motion be granted in all other respects, and

/////

c.  The action proceed on plaintiff's FDCPA claim against Ocwen for violation of 15 U.S.C. § 1692d(5) and (6).

2.  Defendants' motion to dissolve the preliminary injunction and order releasing the bond (ECF No. 162) be granted;

3.  The preliminary injunction entered on April 26, 2013 be dissolved, the related bond be exonerated, and the Clerk be directed to release those funds to defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 15, 2016.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE